■ KWOKSZE WONG et al., Respondents, v NEW YORK TIMES COMPANY, Defendant, GEORGE R. HALL, INC., Doing Business as GEORGE R. HALL CONTRACTING, et al., Respondents, and LEHRER MCGOVERN BOVIS, INC., Appellant. GEORGE R. HALL, INC., Doing Business as GEORGE R. HALL CONTRACTING, et al., Third-Party Plaintiffs-Respondents, v BUDCO ENTERPRISES, INC., Third-Party Defendant-Appellant. (And Other Actions.) [747 NYS2d 213]

Defendant New York Times (hereinafter the Times) entered into a written contract with LMB to construct a 540,000-square-foot, three-story printing plant in Flushing, Queens. Construction of the plant involved two separate projects: the construction of the building and the installation of five huge printing presses. Pursuant to a construction agreement with the Times, defendant-appellant LMB was retained as construction manager to construct the building facility which would house the printing press machinery. LMB hired Vergara-Nastasi Industries, Inc. (Vergara), a carpentry subcontractor; Interstate, a steel subcontractor; and Century Maxim, a concrete subcontractor.

Defendants Rockwell International Corporation and Goss Graphic Systems, Inc., formerly known as Rockwell Graphic Systems, Inc., the Goss Division (collectively Goss) manufactured the printing presses. Goss entered into a sales agreement with the Times for the purchase and installation of the printing press equipment. Under the agreement, Goss had sole responsibility for the installation of the presses.

By purchase order, Goss retained the services of defendant George R. Hall, Inc., doing business as George R. Hall Contracting, for the delivery, rigging and installation of the printing presses. The purchase order provided in relevant part that:

"Subcontractor [Budco] agrees, at its expense, to procure and maintain such comprehensive general liability, worker's compensation and other insurance as is reasonable under the circumstances to protect Contractor [Hall] against damages, claims, obligations, liabilities, losses, costs and expense that may arise out of the work to be performed by Subcontractor,

and except with respect to such worker's compensation insurance, such insurance will name Contractor as an additional insured with respect to such work." Budco obtained liability insurance for itself and named Hall as an additional insured for excess coverage.

Hall in turn contracted with third-party defendant-appellant Budco Enterprises, Inc. (hereinafter Budco) to supply iron workers to perform the actual installation of the presses. Budco hired plaintiff Kwoksze Wong (hereinafter plaintiff) as an ironworker.

As part of the construction, concrete was poured as the floor where the printing presses would be installed. When the concrete was poured, a large space—called a press bay—was left open for each printing press. When each printing press was placed, the concrete subcontractor poured the rest of the concrete around it. However, during the time in which the space around the press had not yet been filled in, Vergara (the carpentry subcontractor) placed plywood boards over the open space. The bay was then roped off by perimeter cables. LMB was in charge of removing the plywood before the subcontractor finished pouring the concrete.

On September 30, 1996, plaintiff and another Budco crewman were working in the area of the press bay, dismantling a crane-like structure known as a gantry, which had been used to load the presses into the building. Plaintiff was standing on the plywood planking over the press bay, removing cross bracing from the gantry. He was not protected by a safety device other than a hard hat provided by his supervisor. The perimeter cables had been removed to facilitate the dismantling. Plaintiff lost his footing while attempting to control a guide rope by which he and his coworker were to haul out the cross brace. Plaintiff fell, dropping approximately 13 feet.

Plaintiff and his wife commenced an action against, inter alia, LMB pursuant to Labor Law §§ 200, 240 and 241. Hall and Goss brought a third-party action against Budco which alleged, inter alia, that Budco had failed to procure insurance for Hall pursuant to the terms of the purchase order. Hall claimed that if any judgment were recovered by plaintiffs against Hall, Budco was responsible for all the "resulting damages" of Hall, including Hall's liability for plaintiffs' damages and for Hall's own legal fees and expenses.

Hall moved for summary judgment on the failure to procure insurance cause of action set forth in the third-party complaint, claiming that it was "entitled to indemnity from and for judgment over and against [Budco]." The Supreme Court granted

Hall's motion finding that Budco was required to obtain for Hall the same kind of insurance it got for itself and provide Hall the same kind of protection.

Plaintiffs cross-moved for partial summary judgment against, inter alia, LMB on the issue of liability. LMB cross-moved for summary judgment dismissing the complaint in its entirety and for dismissal of any cross claims asserted against it. As relates to this appeal, the Supreme Court granted plaintiffs summary judgment against LMB on the Labor Law § 240 (1) claim, denied summary judgment on the Labor Law § 241 (6) claim, and granted summary judgment in LMB's favor dismissing the Labor Law § 200 claim. However, the court did not specifically state that any cross claims were dismissed.

Budco argues that it complied with the letter of the purchase order by obtaining "reasonable" insurance coverage for Hall, and that the court erred in finding that the excess insurance obtained did not satisfy that obligation. More specifically, Budco maintains that the purchase order did not specify that Budco had to obtain primary coverage, and that therefore it did not breach the agreement to procure insurance. However, Budco's argument has been squarely rejected by *Pecker Iron Works of N.Y. v Traveler's Ins. Co.* (290 AD2d 426, *lv granted* 98 NY2d 605). In any event, a contract should be construed in accordance with the parties' purpose (*see Elmsmere Assoc. v Gladstone*, 153 AD2d 501, 506, *amended* 153 AD2d 821). Furthermore, "[a] fair and reasonable interpretation, consistent with that purpose, must guide the courts in enforcing the agreement" (*Matter of Cromwell Towers Redevelopment Co. v City of Yonkers*, 41 NY2d 1, 6). Budco claims that it was only required to provide "reasonable" coverage. However, as the Supreme Court found, only primary insurance would be reasonable under the circumstances of this case. Indeed, "additional insured" has "a well-understood meaning in the insurance industry as an 'entity enjoying the same protection as the named insured'" (*Del Bello v General Acc. Ins. Co.*, 185 AD2d 691, 692, quoting Rubin, Dictionary of Insurance Terms [Barron's 1987]).

Budco argues, in the alternative, that its damages are limited to out-of-pocket costs for insurance. Hall maintains that a construction contract is distinguishable from other contracts and, as a matter of public policy, Budco should make Hall whole regardless of the existence of its own insurance. In *Kinney v G.W. Lisk Co.* (76 NY2d 215), the Court of Appeals held that where a subcontractor breached its agreement to provide insurance for a general contractor, the subcontractor was liable

for the resulting damages, including the general contractor's liability to plaintiff. However, in *Inchaustegui v 666 5th Ave. Ltd. Partnership* (96 NY2d 111), the Court found that damages recoverable by a landlord for a tenant's breach of an agreement to obtain liability insurance for the landlord's benefit were limited to the landlord's out-of-pocket damages caused by the breach. Thus, where a landlord procured its own insurance, it may not look to the tenant for the full amount of the settlement and defense costs it incurred in an underlying personal injury action against the landlord and tenant by an employee of the tenant. Having procured its own insurance, the landlord sustained no loss beyond its out-of-pocket costs. The Court distinguished *Kinney* because the question whether resulting damages could be minimized by any insurance the general contractor had obtained was not raised by the parties or considered by the Court.

Hall's attempt to limit *Inchaustegui* to landlord/tenant cases is unavailing as this Court has calculated damages in construction cases in accordance with *Inchaustegui*. For example, in *Sheppard v Blitman/Atlas Bldg. Corp.* (288 AD2d 33), we held that the proper measure of damages is the full cost of insurance, i.e., the premiums it paid for its own insurance, any out-of-pocket costs that may have been incurred incidental to the policy and any increase in future insurance premiums resulting from the present liability claim (*accord Trokie v York Preparatory School*, 284 AD2d 129; *cf. McDonald v Tishman Interiors Corp.*, 290 AD2d 266) [any limitation of the damages to which a subcontractor and his employee may be entitled pursuant to *Inchaustegui* would be premature inasmuch as the Court is unable to determine which insurance policies will cover the claimed injuries, and to what extent]).

Accordingly, the Supreme Court properly granted Hall summary judgment on the fifth cause of action of the third-party complaint for breach of the agreement to procure insurance. However, the court erred in allowing Hall to recover the full amount of its liability to plaintiffs.

LMB maintains that it played no role in the work for which plaintiff was hired. Indeed, the record reveals that the Times hired LMB solely for the construction of the building. The contract between the Times and Goss for installation of the printing presses was separate. Under that contract, Goss had sole responsibility for installing the presses. Moreover, plaintiff was hired midjob by Budco, a subcontractor of Hall, which was a subcontractor of Goss. Plaintiff had nothing to do with the construction of the building, and LMB, in turn, had nothing to

do with dismantling of the gantry, which was the activity plaintiff was engaged in when he fell.

The Supreme Court nevertheless granted summary judgment to plaintiff against LMB on Labor Law § 240 (1) because LMB, as overseer of the concrete and carpentry subcontractors, was responsible for the plywood-covered gaps in the pressroom floor, on which plaintiff lost his footing. The court also found that plaintiff had a valid section 241 (6) claim based on Industrial Code (12 NYCRR) § 23-1.7 and that "all [defendants are] arguably responsible under this statute." Accordingly, the court denied both plaintiffs' and LMB's cross motions for judgment on that claim.

The court should have granted summary judgment to LMB on the Labor Law § 240 (1) and § 241 (6) claims. The court improperly focused on the cause of the injury, instead of the nature of LMB's relationship to the work in which plaintiff was engaged at the time of the injury (*see Campanella v St. Luke's Roosevelt Hosp.*, 247 AD2d 294, 296). Indeed, in *Russin v Picciano & Son* (54 NY2d 311, 317), the Court of Appeals held that the current provisions of Labor Law §§ 240 and 241 "were intended to shift responsibility for construction site injuries from those parties without *control of the injury producing activity* to the general contractor and owner" (emphasis added). Here, although LMB was a general contractor, it was so only with respect to the building construction. There was a separate prime contractor for the installation of the printing presses. Thus, LMB cannot be held liable because it was "never delegated the general construction work in which plaintiff was engaged at the time of his injury and therefore [was] in no way responsible for the work giving rise to the duties referred to in and imposed by sections 240 and 241 of the Labor Law" (*id.* at 318). Moreover, if liability is to be premised on supervisory control, it must be control over the work in which plaintiff was engaged at the time of his injury (*see Yong Hwan Chae v Lee Natl. Corp.*, 282 AD2d 317, 318, *lv denied* 97 NY2d 602; *see also Maggi v Innovax Methods Group Co.*, 250 AD2d 576, *lv denied* 92 NY2d 819).

Finally, the Supreme Court should have dismissed any common-law contribution and indemnification cross claims and counterclaims asserted against LMB when it granted summary judgment dismissing plaintiff's Labor Law § 200 claim (*see Taylor v V.A.W. of Am.*, 276 AD2d 621, 622).

We need not reach plaintiffs' other contentions raised under Labor Law § 240 (1) in light of our determination. Concur—Andrias, J.P., Rosenberger, Lerner, Friedman and Marlow, JJ.