[821 NYS2d 1]

BP Air Conditioning Corp., Appellant-Respondent, v One Beacon Insurance Group, Respondent-Appellant.

First Department, July 6, 2006

**APPEARANCES OF COUNSEL**

*Wechsler & Cohen, LLP*, New York City (*Mitchell S. Cohen* and *Anne T. Cirasuolo* of counsel), for appellant-respondent.

*DeCicco, Gibbons & McNamara, P.C.*, New York City (*Ioana Gheorghiu* and *Daniel J. McNamara* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

FRIEDMAN, J.P.

The question presented is whether plaintiff, as an additional insured under a commercial general liability (CGL) policy, is entitled to a defense in an action in which it is uncertain whether any eventual judgment against plaintiff will be within the scope of the coverage. Our answer to this question is dictated by the controlling principle that, in the absence of unambiguous contractual language to the contrary, an additional insured "enjoy[s] the same protection as the named insured" (*Pecker Iron Works of N.Y. v Traveler's Ins. Co.*, 99 NY2d 391, 393 [2003] [internal quotation marks and citations omitted]). Since nothing in the subcontract or CGL policy here at issue indicates that plaintiff, as an additional insured, is to be afforded less protection than the named insured, we conclude, as did the IAS court, that the insurer's duty to defend plaintiff in the underlying personal injury action has been triggered. Consistent with the

further holding of *Pecker*, we modify the IAS court's declaration to make clear that plaintiff is afforded primary coverage in the underlying action by the additional insured endorsement, rather than by any policy covering plaintiff as a named insured.

The relevant facts may be briefly stated. In 2000, Henegan Construction Company, Inc. (Henegan), a general contractor, hired plaintiff BP Air Conditioning Corp. (BP) as HVAC subcontractor for a construction project at One World Trade Center (the Project). BP, in turn, subcontracted the HVAC-related steamfitting work for the Project to Alfa Piping Corp. (Alfa). The purchase order representing the agreement between BP and Alfa required Alfa to obtain "Comprehensive General Liability Insurance (including contractual liability) and automobile insurance in amounts of not less than $4,000,000 combined single limit, naming [BP] additional insured, all policies to provide for 30 day notice to [BP] prior to cancellation or material modification."

As required by Alfa's agreement with BP, Alfa's CGL policy for the relevant period included an additional insured endorsement providing in pertinent part as follows:

> "Who is An Insured (Section II) is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed."

Defendant One Beacon Insurance Group (Beacon) is the successor in interest to the insurance company that issued Alfa's CGL policy.

On December 5, 2000, Joseph Cosentino, while working on the Project as an employee of Karo Sheet Metal, Inc. (Karo), another subcontractor of BP, allegedly was injured when he slipped and fell on a patch of oil at the work site. Cosentino commenced an action against Henegan, which action is now captioned *Cosentino v Henegan Construction Company, Inc., et al.* (New York County Clerk's Index No. 110853/01 [hereinafter, the *Cosentino* Action]). Henegan brought a third-party action against BP and

Alfa; thereafter, Cosentino added BP and Alfa (among other parties) as direct defendants. After Beacon declined BP's tender of its defense in the *Cosentino* Action, BP commenced a fourth-party action against Beacon seeking a declaration as to BP's rights as an additional insured under Alfa's policy. BP's fourth-party claim against Beacon was subsequently severed from the *Cosentino* Action, giving rise to the instant independent declaratory judgment action, to which BP and Beacon are the sole parties.

It appears from the evidence gathered through discovery in the *Cosentino* Action (and placed in the record before us) that a question of fact exists as to which contractor was the source of the patch of oil on which Cosentino slipped. Specifically, the oil may have originated from any of the contractors who used oil to thread pipe at the work site. Such contractors included Alfa, Forest Electric Corporation (the electrical contractor), and a sprinkler contractor. Of these contractors, only Alfa was a subcontractor of BP.

The instant appeal arises from BP's motion for partial summary judgment in this declaratory judgment action. The motion sought a declaration requiring Beacon to undertake BP's defense in the *Cosentino* Action and to reimburse BP for its past defense costs therein. Beacon opposed the motion, arguing, inter alia, that BP's additional insured coverage under Alfa's policy would not be triggered until the cause of Cosentino's accident had been adjudicated. Beacon also argued, in the alternative, that, even if its duty to defend BP under Alfa's policy had been triggered, it could not be determined whether Beacon was required to bear 100% of BP's defense costs as the primary insurer. Beacon contended that coverage by other carriers, who were not parties to this action and whose policies were not before the court, might also have been triggered, requiring such carriers to share in the cost of defending BP. Beacon suggested that such coinsurers might include BP's own carrier and the carrier insuring Karo, the BP subcontractor that had employed Cosentino. In this regard, Beacon pointed out that Karo's contract with BP contained an insurance provision (identical to the one in the BP/Alfa contract) requiring Karo to have its CGL policy cover BP as an additional insured.

In the order appealed from, the motion court held that the allegations against Alfa in the *Cosentino* Action had triggered BP's additional insured coverage under Alfa's policy, thereby obligating Beacon to defend BP, and granted BP's motion to the

extent of issuing a declaration to that effect. The court denied the motion, however, to the extent it sought a declaration that Beacon's coverage was primary, on the ground that no such determination could be made without an examination of the other potentially applicable policies, which were not before the court.[1] BP has appealed, and Beacon has cross-appealed.

We turn first to the question raised by Beacon's cross appeal, namely, whether the pleadings and evidence in the *Cosentino* Action obligate Beacon to defend BP as an additional insured under Alfa's policy. For the reasons set forth below, we answer this question in the affirmative, as did the motion court.

 We begin by reviewing the principles governing a liability insurer's duty to defend its insured. Our Court of Appeals very recently has had occasion to reiterate these principles:

> "It is well settled that an insurance company's duty to defend is broader than its duty to indemnify. Indeed, the duty to defend is 'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage' (*Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 648 [1993]). 'If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be' (*Ruder & Finn v Seaboard Sur. Co.*, 52 NY2d 663, 670 [1981]).

> "The duty remains 'even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered' (*Fitzpatrick v American Honda Motor Co.*, 78 NY2d 61, 63 [1991]). For this reason, when a policy represents that it will provide the insured with a defense, we have said that it actually constitutes 'litigation insurance' in addition to liability coverage (*see Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 310

---

1. Although the order appealed from also purports to deny BP's motion insofar as it sought indemnification, it appears from the record that BP's motion did not seek a declaration concerning indemnification. In any event, BP's appeal does not challenge the motion court's accurate statement that a declaration as to whether Beacon is obligated to indemnify BP for any liability to Cosentino cannot be made until the cause of Cosentino's accident (i.e., the source of the oil on which he slipped) has been determined.

[1984], quoting *International Paper Co. v Continental Cas. Co.*, 35 NY2d 322, 326 [1974]). *Thus, an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course."* (*Automobile Ins. Co. of Hartford v Cook*, 7 NY3d 131, 137 [2006] [emphasis added].)

Under the foregoing principles, there can be no doubt that Beacon is obligated to defend BP in the *Cosentino* Action. Cosentino's amended complaint alleges that his injuries were caused by the negligence of, among other defendants, Alfa, BP's subcontractor and the subject policy's named insured. Thus, there is a "reasonable possibility" (*Continental Cas. Co.*, 80 NY2d at 648) that the *Cosentino* Action will result in a judgment against BP within the scope of its coverage under Alfa's policy with Beacon. That policy, to reiterate, covers BP as an additional insured "with respect to liability arising out of [Alfa's] ongoing operations performed for [BP]." Plainly, if BP is ultimately held liable to Cosentino, such liability would "aris[e] out of [Alfa's] ongoing operations performed for [BP]" to the extent the factfinder in the *Cosentino* Action determines that Alfa's negligence in the course of its work as a BP subcontractor was a contributing cause of Cosentino's injuries. It has no bearing on the existence of a duty to defend that it is also possible that Beacon "may not be required to pay once the litigation has run its course" (*Automobile Ins. Co. of Hartford v Cook*, 7 NY3d at 137, *supra*).

Beacon concedes that the *Cosentino* Action may result in a judgment against BP within the scope of BP's coverage under Alfa's policy. Nonetheless, Beacon denies that it has any duty to defend BP at this juncture. Beacon argues that the liberal principles governing the activation of the duty to defend (as set forth in *Automobile Ins. Co. of Hartford v Cook* [*supra*], and the cases cited therein) apply only to named insureds, not to parties covered pursuant to additional insured endorsements, such as BP. Coverage under an additional insured endorsement is triggered, Beacon asserts, only when a court has made findings of fact giving rise to such coverage under the terms of the endorsement. Although the dissent accepts this line of argument, it is inconsistent with the Court of Appeals' teaching on the rights of additional insureds.

In *Pecker Iron Works of N.Y. v Traveler's Ins. Co.* (99 NY2d 391 [2003], *supra*), the issue presented was whether Pecker was

afforded primary or excess coverage pursuant to its status as an additional insured under an insurance policy issued to Upfront, one of Pecker's subcontractors. The Pecker-Upfront agreement, like the BP-Alfa agreement here, required the subcontractor (Upfront) to have its liability policy name the general contractor (Pecker) as an additional insured (*id.* at 392). Upfront's liability policy provided Upfront with primary coverage, and allowed Upfront to designate additional insureds, but provided that such an additional insured would receive only excess coverage, unless Upfront had agreed in writing to provide the additional insured with primary coverage (*id.* at 393). Although the Pecker-Upfront agreement did not specify whether Upfront was to furnish Pecker with primary or excess insurance, the Court of Appeals held that Pecker's additional insured coverage under Upfront's policy was primary.

The Court of Appeals began its analysis by taking note of the meaning of the term "additional insured": " 'Additional insured' is a recognized term in insurance contracts, with an understanding crucial to our conclusion in this case. As cases have recognized, the 'well-understood meaning' of the term is 'an "entity enjoying *the same protection as the named insured.*" ' " (*Id.* [emphasis added], quoting *Del Bello v General Acc. Ins. Co. of Am.*, 185 AD2d 691, 692 [1992], quoting Rubin, Dictionary of Insurance Terms 7 [Barron's 1987].) Thus, the Court concluded that, since there was no indication in the Pecker-Upfront agreement that nonprimary coverage would satisfy the additional insured coverage requirement, and since Upfront's coverage under the subject policy was primary, Pecker's additional insured coverage under the policy was also primary. The Court stated:

> "When Pecker engaged Upfront as a subcontractor and in writing provided that Upfront would name Pecker as an additional insured, Pecker signified, and Upfront agreed, that Upfront's carrier—not Pecker's—would provide Pecker with primary coverage on the risk. Pursuant to the policy provision at issue, Travelers [Upfront's carrier] agreed to provide primary insurance to any party with whom Upfront had contracted in writing for insurance to apply on a primary basis. When Upfront agreed to it, the policy provision was satisfied." (99 NY2d at 393-394.)

Notably, the Appellate Division order in *Pecker*, which the Court

of Appeals affirmed, specifically declared that Travelers was "obligated to defend" Pecker in the underlying action (290 AD2d 426, 427 [2002], *affd* 99 NY2d 391[2003], *supra*).

It follows from *Pecker* that BP's coverage as an additional insured under Alfa's policy is primary, a point apparently not disputed by Beacon. Moreover, since BP, as an additional insured under Alfa's policy, "enjoy[s] the same protection as the named insured" (*Pecker*, 99 NY2d at 393), the same principles govern the activation of Beacon's duty to defend for both Alfa and BP.[2] Accordingly, since it is undisputed that Cosentino's amended complaint sets forth a potential basis for BP's liability within the scope of BP's coverage under Alfa's policy, and it remains possible that Cosentino will prevail on that basis, Beacon is obligated to defend BP in the *Cosentino* Action, just as it would be obligated to defend Alfa if called upon to do so. That Alfa may ultimately be exonerated of responsibility for Cosentino's injuries—in which event Beacon would have no obligation to indemnify BP—is immaterial to the issue of Beacon's duty to defend BP while the issue of Alfa's responsibility remains unresolved.

The dissent claims that we "confuse[ ] an insurer's duty owed to its named insured with the duty owed . . . to a putative additional insured." Far from being "confuse[d]," we are simply giving effect to the Court of Appeals' statement that an additional insured "enjoy[s] the same protection as the named insured" (*Pecker*, 99 NY2d at 393). As applied here, this principle can mean only that, for named insureds and additional insureds alike, the activation of the duty to defend depends on the allegations of the pleadings. In light of *Pecker*, it is simply untenable for the dissent to assert that it is a "condition precedent" to an insurer's duty to defend an additional insured that a court have rendered findings of fact establishing the additional insured's entitlement to indemnification. While the dissent dismisses additional insureds in BP's position as having only "putative" additional insured status, and attempts to distinguish a named insured from an additional insured on the ground that the former's "status as an insured is not conditional," this distinction cannot withstand scrutiny. The named insured and the additional insured each enjoys "status as an insured" to the extent of the coverage afforded it by the policy. As the Court of

---

**2.** For this reason, it is of no moment that, as the dissent points out, *Automobile Ins. Co. of Hartford v Cook* (*supra*) and the cases cited therein dealt with the rights of named insureds.

Appeals has recently reminded us, where a liability policy promises defense as well as indemnification, "litigation insurance"—even where an eventual judgment against the insured may not be within the scope of coverage—is an integral part of the benefit of the insured's bargain (*Automobile Ins. Co. of Hartford v Cook*, 7 NY3d at 137, *supra*).

Since "litigation insurance" is an essential component of the liability insurance package, and an additional insured "enjoy[s] the same protection as the named insured" (*Pecker*, 99 NY2d at 393), adoption of the dissent's position would defeat the reasonable expectations of the additional insured. As a California appellate court has observed:

> "[A] key motivation in procuring an additional insured endorsement is to offset the cost of defending lawsuits where the general contractor's liability is claimed to be derivative. . . . Since only a small percentage of these cases are resolved by a final liability determination, a defense obligation contingent on a liability finding would undermine a primary purpose for which the insurance was obtained." (*Maryland Cas. Co. v Nationwide Ins. Co.*, 65 Cal App 4th 21, 33, 76 Cal Rptr 2d 113, 121 [1998] [citation omitted].)

A treatise on additional insured coverage offers a similar explanation:

> "One of the reasons additional insured status is sought is to avoid the necessity for the [additional insured] to use its own policy. If the [additional insured] is forced to have its own insurance defend a suit, the very purpose underlying additional insured status has been thwarted." (Malecki, Ligeros and Gibson, The Additional Insured Book, at 104 n 12 [5th ed 2004].)

Thus, parties seek additional insured status with the expectation of receiving "the right to an immediate defense by the named insured's insurer rather than being indemnified for defense costs at a later date" (*id.* at 1).

Consistent with the foregoing analysis, this Court held, in at least three unanimous decisions predating *Pecker*, that an insurer's duty to defend an additional insured is not contingent on there having been an adjudication of liability issues giving rise to a duty to indemnify the additional insured (*see Pavarini Constr. Co. v Liberty Mut. Ins. Co.*, 270

AD2d 98, 99 [2000] [insurer was obligated to defend additional insureds in personal injury action brought by employee of named insured, notwithstanding that "(w)hether the underlying plaintiff's injuries come within the policy's exclusion for injuries caused by the additional insureds' negligence is a question that must await a determination of liability in the underlying action"]; *79th Realty Co. v X.L.O. Concrete Corp.*, 247 AD2d 256, 257 [1998] [insurer was obligated to defend general contractor as additional insured under subcontractor's liability policy, although there were not yet any liability findings from which it could be determined whether insurer would be obligated to indemnify general contractor]; *City of New York v Consolidated Edison Co. of N.Y.*, 238 AD2d 119, 121 [1997] [the author of the dissent herein joined in holding that a determination in the underlying personal injury action that named insured was free of liability, thereby absolving insurer of any duty to indemnify additional insureds, was "immaterial to the issue of the insurer's duty to provide a defense" to additional insureds]).

This Court's succinct analysis of this issue in *79th Realty Co. v X.L.O. Concrete Corp.* (247 AD2d 256 [1998], *supra*)—a case almost exactly on point—is instructive:

> "Here, since the complaint in the underlying personal injury action contains allegations against both the general contractor and the subcontractor, and the subject policy clearly names the general contractor as an additional insured and provides coverage that is primary, the insurer has a duty to defend as a matter of law, and we so declare. However, a declaration that the insurer has a duty to indemnify the general contractor requires a determination that the underlying accident arose out of the subcontractor's performance of work under its contract with the general contractor, which must await a determination of the liability in the underlying personal injury action." (*Id.* at 257 [citations omitted].)

The dissent acknowledges the Court of Appeals' decision in *Pecker*, but seeks to avoid *Pecker*'s clear implication for this case by restricting the applicability of the principle it announces to the particular set of facts presented in that case. The dissent overlooks the fact that the *Pecker* court answered the question before it in a way that plainly was not circumscribed to the par-

ticular factual scenario before it. To reiterate, the Court explained that the basis for its decision in *Pecker* was the principle—not limited in any way that would make it inapplicable here—that, absent unambiguous contractual language to the contrary, an additional insured "enjoy[s] the same protection as the named insured" (99 NY2d at 393). The precise holding in *Pecker* was that additional insurance is primary insurance unless the controlling documents specifically provide otherwise; that holding fully applies to this case insofar as it means that BP's additional insured coverage is primary—a point not even disputed by Beacon. Since the coverage is primary, it follows that Beacon has a duty to defend BP in the *Cosentino* Action.

Notwithstanding *Pecker* and this Court's pre-*Pecker* authority discussed above, the dissent asserts that this case is "controlled" by *AIU Ins. Co. v American Motorists Ins. Co.* (292 AD2d 277 [2002]), a case this Court decided a year before the Court of Appeals' decision in *Pecker*. To the extent *AIU* supports the dissent's position, we decline to follow it, as it is inconsistent with the definition of "additional insured" adopted by the Court of Appeals in *Pecker* and by this Court in *Kwoksze Wong v New York Times Co.* (297 AD2d 544, 547 [2002]), which was decided five months prior to *Pecker*. Moreover, even before *Pecker* and *Wong* were decided, the above-cited prior decisions of this Court that support BP's position (*Pavarini, 79th Realty*, and *Consolidated Edison*), rather than the apparently anomalous *AIU* decision, represented the clear weight of authority in this Department on the precise issue presented by this appeal. We would add that *Pavarini, 79th Realty* and *Consolidated Edison* may not have been brought to the attention of the bench that decided *AIU*, since those cases are not discussed in *AIU*.[3]

---

3. Contrary to the dissent's view, *Pavarini* cannot be distinguished on the ground that the status of the additional insured in that case was "unconditional." BP's additional insured status is, as previously discussed, also unconditional, the only question being the same one that was presented in *Pavarini*, i.e., whether any eventual judgment against the additional insured will be covered by the policy's additional insured endorsement. The dissent cites no authority for its theory that the existence of a duty to defend an additional insured depends on whether the additional insured's eventual liability may fall outside the general scope of coverage (as here) or within a particular exclusion from coverage (as in *Pavarini*). We note that the dissent does not dispute that *79th Realty* and *Consolidated Edison* are contrary to its position, but instead contends that "these cases should yield in their precedential value" to *AIU*, an argument to which we have already responded. As to the

This Court's decision in *Kajima Constr. Servs. v CATI, Inc.* (302 AD2d 228 [2003]), in which an additional insured was denied a declaration concerning the insurer's defense obligations, does not support the dissent's position. In *Kajima,* unlike in this case, the additional insured endorsement of the subject liability policy (issued by the defendant insurer, Investors) "provide[d] that the additional insured coverage [would] be primary only if the underlying claim [were] determined to be solely as a result of the negligence or responsibility of the named insured" (*id.* at 229). Under this provision, we said, "it cannot be determined whether [the additional insured] is entitled to primary liability coverage under the policy issued by Investors until a determination as to liability is made in the underlying action" (*id.*). Pending such a determination, Investors was, by the terms of its additional insured endorsement, merely an excess insurer, and, as such, without any obligation to defend the additional insured prior to the exhaustion of primary coverage (*see General Motors Acceptance Corp. v Nationwide Ins. Co.,* 4 NY3d 451, 456 [2005]; *Firemen's Ins. Co. of Washington, D.C. v Federal Ins. Co.,* 233 AD2d 193 [1996], *lv denied* 90 NY2d 803 [1997]). Thus, we stated in *Kajima* that the "determination [of the underlying action] will also resolve the issue of primary responsibility for defense expenses" (302 AD2d at 229). Nothing of the kind is true here, where, under the terms of the additional insured endorsement to Alfa's policy, Beacon's current status as a primary insurer is not contingent on any future factual determination. We note that *Kajima* was distinguished on similar grounds in *Landpen Co., L.P. v Maryland Cas. Co.* (2005 WL 356809, *8-9, 2005 US Dist LEXIS 2145, *26-28 [SD NY, Feb. 15, 2005]).

The particular language of the *Kajima* additional insured endorsement provides the context of our characterization there of the rule governing the activation of the duty to defend as "not unyielding but rather one of expedience" (302 AD2d at 229). It was only because Investors was not, at that juncture, a primary insurer under its policy's additional insured endorsement that we saw "no practical need," prior to the determination of the underlying action, for Investors to contribute to the defense of an additional insured that was already being defended

remark by the author of the dissent that his change of position since *Consolidated Edison* may reflect "his capacity for growth," we can only salute our esteemed colleague's refreshing, and characteristic, intellectual honesty, even as we respectfully disagree with the conclusion he reaches in this case.

by its own carrier (*id.*). Since the additional insured endorsement at issue here does not use the contingent language found in the additional insured endorsement in *Kajima*, the additional insured's receipt of a defense from its own carrier lacks the significance in this case that it had in *Kajima*. Plainly, "expedience" cannot trump the meaning of the applicable contractual language, as that language has been construed by the Court of Appeals. To reiterate, under *Pecker*, the applicable provisions of the BP-Alfa agreement and of Alfa's insurance policy mean that BP is currently afforded primary coverage as an additional insured under Alfa's policy—coverage that obviously includes a defense.[4]

The dissent finds it "puzzling" that we are affirming the declaration of Beacon's duty to defend BP. In fact, our holding is readily explained. As discussed above, the result we reach is required by *Pecker*, accords with the weight of this Court's prior authority, and gives effect to the parties' reasonable expectations and to the contractual arrangements they have made among themselves. While the dissent may see "no practical need" for BP to receive a defense from Beacon before there is a determination as to liability in the underlying action, that is precisely what BP bargained to receive from Alfa, and what the issuer of Alfa's CGL policy agreed to provide, presumably in exchange for payment of an additional premium charge. Since these arrangements are entirely legal and do not violate any public policy, it is not a court's place to undo them, or to delay giving them effect, based on the bench's view of what would best serve efficiency or convenience.[5]

---

**4.** As the dissent acknowledges, in *Crespo v City of New York* (303 AD2d 166 [2003]), we held that an additional insured was not entitled to summary judgment against the carrier on the issue of *indemnification*—not defense— before there were findings as to liability. Thus, the dissent's quotation from *Crespo* does little to advance its position on this appeal, in which, as discussed at footnote 1 above, it is undisputed that whether Beacon will ultimately have a duty to indemnify BP against any eventual judgment cannot yet be determined. Indeed, not only does our *Crespo* decision not discuss the duty to defend, the record of that case reveals that the motion court declared that the carrier *did* have an obligation to defend the additional insured, and that no appeal was taken from that determination.

**5.** We disagree with the dissent's apparent suggestion that the availability of a defense under additional insured coverage should depend upon whether coverage by the additional insured's own carrier is available. Given that additional insured coverage is primary coverage (unless the controlling documents expressly provide otherwise), we do not see why the availability of coverage from the additional insured's own carrier is relevant to the trigger-

The dissent's concern about a potential conflict of interest is misplaced. Notwithstanding any dicta in *Kajima* (which we have already distinguished), we see nothing "unseemly" or (as the dissent would have it) "absurd" about the prospect that BP's attorneys, while Beacon is paying their bills, may take positions adverse to Beacon's named insured. This is a frequent scenario in litigation, and one specifically contemplated by Alfa's CGL policy, which provides that the insurance applies "[s]eparately to each insured against whom claim is made or 'suit' is brought." As the dissent recognizes, a major league baseball team may pay part of the salary of a player who has been traded to another team. Similarly—and especially in the context of additional insurance—insurance companies frequently retain and pay lawyers who may adopt positions adverse to the interests of other parties covered by the same insurer. Contrary to the dissent's complaint, we are not "cavalier[ly] blurring . . . discrete and antagonistic interests" simply by giving recognition to this fact of life in the world of business and law. The operative principle is that the lawyer's loyalty is owed, not to the insurance company that has retained and paid it, but to the client alone. Thus, no conflict of interest need arise.[6]

We now proceed to consider the question raised by BP's appeal, which is whether carriers other than Beacon, depending on the terms of their policies (which are not in the record), may be primary coinsurers of BP's exposure in the *Cosentino* Action. The motion court expressed the view that such coinsurance may exist. BP, on the other hand, takes the position that the Court of Appeals' decision in *Pecker* establishes that Beacon's coverage is primary to any other insurance. We agree in part with BP, and in part with the motion court.

---

ing of the duty to defend on the part of the carrier providing additional insured coverage.

**6.** Although it does not affect our conclusion that Beacon is obligated to defend BP, we do not share the dissent's certainty that BP's "attorneys will undoubtedly endeavor in the underlying action to cast Beacon's named insured, Alfa, as the party responsible for Cosentino's injuries." To the contrary, the dissent's speculation overlooks the prospect that BP may seek to avoid liability by casting Forest Electric Corporation or the sprinkler contractor—neither of which was a subcontractor of BP—as the source of the oil on which Cosentino slipped. We would add that the additional insured endorsement to Alfa's CGL policy (quoted in pertinent part in the third paragraph of this opinion) does not, contrary to the dissent's assertion, appear to limit BP's coverage to vicarious liability for Alfa's conduct. Nothing in the endorsement excludes coverage for liability for injuries caused by the concurrent negligence of Alfa and BP, or of Alfa and another BP subcontractor.

■ In *Pecker*, the Court of Appeals stated: "When Pecker engaged Upfront as a subcontractor and in writing provided that Upfront would name Pecker as an additional insured, Pecker signified, and Upfront agreed, that Upfront's carrier— *not Pecker's*—would provide Pecker with primary coverage on the risk" (99 NY2d at 393-394 [emphasis added]). This statement that Pecker's primary coverage for the relevant risk was its additional insured coverage under Upfront's policy, rather than the coverage under its own policy, is controlling here. On this point, the instant case cannot be meaningfully distinguished from *Pecker*. Here, as in *Pecker*, the contractual provision requiring Alfa to procure additional insured coverage (quoted above, in the third paragraph of this writing) contains "no indication . . . that as an 'additional insured' [BP] would receive only excess, as opposed to primary, coverage" (99 NY2d at 393). Thus, as between BP's coverage as an additional insured under Alfa's policy and BP's coverage as a named insured under its own policy, the additional insured coverage is primary. Accordingly, we modify the motion court's order to render a declaration to that effect.[7]

While *Pecker* establishes that BP's coverage under its own policy is excess to BP's coverage under Alfa's policy, nothing in *Pecker* excludes the possibility that a party may have additional insured primary coverage for the same exposure under more than one policy, with each carrier having a duty to defend. If this proves to be the case here, Beacon may be entitled to require any other carrier whose policy affords BP primary coverage in the *Cosentino* Action to contribute to the costs of BP's defense (*see Cordial Greens Country Club v Aetna Cas. & Sur. Co.*, 41 NY2d 996, 997 [1977]; *Federal Ins. Co. v Atlantic Natl. Ins. Co.*, 25 NY2d 71, 78-79 [1969]; *Fireman's Fund Ins. Co. v Abax, Inc.*, 12 AD3d 277, 278 [2004]; *Travelers Ins. Co. v Commissioners of State Ins. Fund*, 227 AD2d 208 [1996]; 15 Couch on Insurance 3d §§ 217:4, 217:12).

Multiple additional insured coverage may exist here, given that, as previously noted, the contract between BP and Karo (Cosentino's employer) contained an insurance provision identical to the one in the contract between BP and Alfa, requiring Karo to have BP named as an additional insured under Karo's

---

**7.** We observe that pre-*Pecker* case law from the Court of Appeals arguably would have supported deeming BP's own carrier and a carrier affording BP additional insured coverage to be primary coinsurers (*see Jefferson Ins. Co. of N.Y. v Travelers Indem. Co.*, 92 NY2d 363, 372 [1998]).

CGL policy. While the contract between BP and Karo is in the present record, Karo's liability insurance policy is not, so we cannot determine, at this juncture, whether or not that policy affords BP additional insured coverage under the circumstances of this case. Beacon is not precluded from seeking to prove that Karo's carrier, or any other carrier affording BP additional insured coverage, is required to contribute to BP's defense and, if necessary, indemnification, in the *Cosentino* Action. We hasten to add, however, that this does not mean that BP is not entitled to require Beacon, as primary insurer, to bear 100% of BP's defense costs in the first instance (*see Continental Cas. Co.*, 80 NY2d at 655 [each primary insurer is required "to defend if there is an asserted occurrence covered by its policy, and the insured should not be denied initial recourse to a carrier merely because another carrier may also be responsible" (citations omitted)]; 14 Couch on Insurance 3d § 200:40). Rather, whether Beacon is entitled to require other responsible carriers, if any, to contribute to the costs of BP's defense is a matter between Beacon and those other carriers.

BP has also argued that, apart from its status as an additional insured under Alfa's policy, Beacon is obligated to defend and indemnify it in the *Cosentino* Action pursuant to Alfa's coverage under the policy for its contractually assumed indemnification obligations. In this connection, BP points to the provision of its subcontract with Alfa requiring Alfa to "indemnify [BP] and hold [it] harmless" against any claims for bodily injury, inter alia, "arising out of or resulting from the performance of [Alfa's] Work" that are "caused in whole or in part by any negligent act or omission of [Alfa]." However, even if it is assumed that the indemnification provision of Alfa's subcontract is enforceable (a question we need not decide), and that BP is (as it contends) a third-party beneficiary of Alfa's contractual indemnification coverage under the subject policy, BP's rights as a beneficiary of such coverage apparently would be no greater under present circumstances than its rights as an additional insured. Accordingly, since we have already concluded that BP is currently entitled to primary coverage and a defense in the *Cosentino* Action pursuant to its status as an additional insured, we need not address BP's argument based on the policy's contractual indemnification coverage.

Finally, the motion court correctly determined that, contrary to Beacon's arguments, the record establishes that the purchase order purporting to set forth the terms of an agreement be-

tween BP and Alfa does, in fact, constitute the agreement between such parties with respect to the Project. Accordingly, BP and Alfa "agreed in writing in a contract or agreement that [BP] be added as an additional insured on [Alfa's] policy," as Alfa's CGL policy required to render BP an additional insured thereunder.

Accordingly, the order of the Supreme Court, New York County (Paula J. Omansky, J.), entered October 1, 2004, which granted BP's motion for partial summary judgment to the extent of declaring Beacon obligated to defend BP as an additional insured in the *Cosentino* Action, should be modified, on the law, to further declare that, as between Beacon's policy and any policy covering BP as named insured, any coverage Beacon's policy affords BP in the *Cosentino* Action is primary, and otherwise affirmed, with costs in favor of BP.

SULLIVAN, J. (dissenting). In the related personal injury action giving rise to this separate action, Joseph Cosentino, an employee of a subcontractor at a construction project, was allegedly injured at the job site at the World Trade Center when he slipped on an oil slick on the 39th floor. He sued the general contractor, Henegan Construction Company, which, in turn, commenced a third-party action against BP Air Conditioning Corp., the plaintiff in this action, which it had retained to perform the HVAC installation work, and Alfa Piping Corp., to which BP had subcontracted the steamfitting portion of the job. Karo Sheet Metal Inc., Cosentino's employer, had also been subcontracted by BP to do the sheet metal work under the same terms and conditions as Alfa. Cosentino thereupon served an amended complaint naming both BP and Alfa as direct defendants. As the majority notes, pretrial discovery in the underlying action indicates the existence of a factual question as to which of these contractors, among others, is responsible for the patch of oil on which Cosentino allegedly slipped.

BP's agreement with Alfa required the latter to obtain comprehensive general liability insurance naming BP as an additional insured. General Assurance Company issued such a policy to Alfa; One Beacon Insurance Group is the successor in interest to General Assurance and the defendant in the instant action. Beacon declined to defend BP in the *Cosentino* action on the ground, inter alia, that its policy's additional insured endorsement was never triggered given the factual issue as to liability in the underlying *Cosentino* action. As a result, BP commenced a fourth-party action against Beacon, claiming ad-

ditional insured status under Alfa's policy and seeking a declaration of its rights thereunder. The fourth-party action was thereafter severed as an independent action. BP thereafter moved for summary judgment on liability declaring that Beacon was obligated to defend and indemnify it in the *Cosentino* action. Supreme Court granted the motion but only to the extent of declaring that Beacon is obligated to defend it in the underlying *Cosentino* action. The order granting that limited relief is the subject of this appeal.

The critical language of the additional insured endorsement at issue, insofar as is relevant, is as follows: A "person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured." Thus, the endorsement creates a condition precedent to the triggering of additional insured coverage, that is, as in this case, that the putative additional insured's liability for the underlying claim "aris[e] out of [Alfa's] ongoing operations performed for [BP]." In the circumstances presented here, in order to activate the endorsement, it must be shown that the oil that caused Cosentino to slip and fall emanated, in whole or part, from Alfa's work. As the motion court recognized, the record confirms and the majority concedes, Cosentino, at this juncture, cannot show which contractor at the job site created the complained-of condition. For that reason, the motion court denied that part of BP's motion which sought partial summary judgment declaring Beacon obligated to indemnify it for any liability damages awarded to Cosentino in the underlying action. That determination has not been appealed. The motion court, however, did declare that Beacon is obligated to defend BP in that action. It is with the latter aspect of the court's ruling that we disagree, and which prompts this dissent.

The motion court's determination that Beacon, at this point, has no obligation to indemnify is eminently correct. That determination should as well dispose of any alleged obligation to defend, a duty which, unlike that in the defense clause in direct liability coverage, is inseparable from the duty to indemnify. At his deposition, Cosentino testified that many contractors were working at the job site on the 39th floor where his accident occurred. Cosentino remembered seeing electricians, sprinkler system workers and possibly steamfitters. In that regard, Cosentino also sued the sprinkler contractor, as well as a plumbing and mechanical contractor. Nowhere in his testimony did Cosentino specifically identify any particular contractor as having

caused the oil spill. Henegan's field superintendent testified that both Forest Electric, also a defendant in the underlying action, and Alfa used lubricating machines. Forest used them on electrical conduit pipe. The witness described Forest's lubricating machine as a threading machine that has an oil pump with a reservoir pan at the bottom that furnishes oil to lubricate the pipe being threaded. The witness did not know where Alfa's lubricating machines were located. Thus, the oil that caused Cosentino to fall could have emanated from the activities of Forest, Alfa or the sprinkler system contractor, or a combination thereof.

Given this material issue of fact, which can only be resolved by the factfinder in the *Cosentino* action, the motion court correctly ruled that it cannot be summarily determined, as a matter of law, that an oil spill resulting from Alfa's activities caused Cosentino's accident. If it is determined by the factfinder that Cosentino slipped on oil attributable to the work of Forest, the sprinkler company or some contractor other than Alfa, BP would not have additional insured status because the Beacon additional insured endorsement is triggered only if the liability arose out of the operations of the named insured, Alfa. Since that issue cannot be summarily resolved, no coverage obligation, either to indemnify, as the motion court held, or to defend, is, as yet, triggered.

It is the insured's burden to show that the provisions of a policy provide coverage (*Chase Manhattan Bank v Travelers Group,* 269 AD2d 107, 108 [2000]). "It is . . . well-established that the insured or the party seeking a declaration of coverage is obliged in the first instance to demonstrate the existence of coverage and the satisfaction of all conditions precedent" (*Thomson v Power Auth. of State of N.Y.,* 217 AD2d 495, 496 [1995]).

The instant case is controlled by this Court's determination in *AIU Ins. Co. v American Motorists Ins. Co.* (292 AD2d 277 [2002]). There, the plaintiff in the underlying personal injury action, an employee of a drywall subcontractor, allegedly tripped during the course of construction and fell over debris, including a pipe that may have been left at the site by the electrical subcontractor. The employer's liability insurer, American Motorists, as here, additionally covered the owner of the construction site and the general contractor. The electrical subcontractor had liability coverage with St. Paul Fire & Marine Ins. Co. that similarly covered the owner and the general contractor. In the employee's underlying action, the owner and general contractor

defendants impleaded the plaintiff's employer—the drywall subcontractor—and the electrical subcontractor. AIU, the liability insurer of both the owner and the general contractor, commenced a declaratory action against both American Motorists and St. Paul to compel them to undertake the defense of the owner and the general contractor and to reimburse AIU for the expenditures incurred in their defense. In both the American Motorists and St. Paul policies the endorsements naming the owner and the general contractor as additional insureds limited liability coverage for additional insureds to claims specifically "arising out of" work performed for the additional insured (*id.* at 278).

This Court held that since the employee allegedly suffered his injury during the course of work for the owner and the general contractor, the insurer for the employer of the injured plaintiff in the underlying action, American Motorists, owed a coverage obligation to these additional insureds both to defend and cover their already incurred defense expenditures. By contrast, however, the Court found that since the injured worker was not employed by the electrical subcontractor, his activities did not "arise out of" work being performed by that subcontractor for the owner or the general contractor (*id.* at 279). In a holding determinative of the duty-to-defend issue presented on this appeal, the Court held,

> "It may turn out that [the electrical subcontractor], by failing to clean up the area, was responsible for the debris that caused the [drywall subcontractor's] employee's slip and fall, but that remains to be determined in the underlying action. At the present time, under the facts in the record before us, [the electrical subcontractor's] insurer is under no obligation to defend or indemnify [the owner and the general contractor]" (*id.*).

As in the *AIU* case, Beacon cannot be declared obligated to defend or indemnify BP unless and until it is determined that its additional insured obligation is triggered. That determination can only be made if the factfinder in the underlying *Cosentino* action determines that Cosentino's accident resulted from Alfa's activities (*see Brookhaven Mem. Hosp. Med. Ctr. v County of Suffolk,* 155 AD2d 404, 406 [1989]).

This Court's language in *Crespo v City of New York* (303 AD2d 166, 167 [2003]), where only a declaration of an insurer's obligation to indemnify was sought, is instructive:

"The additional insured endorsement pursuant to which indemnification from Nationwide is sought states that the insurance 'with respect to [TDX] applies only to the extent that [TDX] is held liable for [S&P's] acts or omissions.' Inasmuch as it has not yet been determined whether plaintiff's harm was caused by negligence by S&P, and it remains possible that the trier of fact will find that plaintiff's harm was caused by negligence by TDX, it cannot now be determined whether TDX's claim falls within the subject additional insured endorsement."

Interestingly, the cases interpreting the "arising out of" language cited by BP involve situations where the named insured of the insurer from whom additional insured coverage is sought is either the injured plaintiff's employer or a party who hired the plaintiff's employer as a subcontractor (*see e.g. Structure Tone v Component Assembly Sys.*, 275 AD2d 603 [2000]). In *Structure Tone,* the general contractor sought additional insured coverage from the liability insurer of a carpentry subcontractor. The additional insured endorsement limited such coverage "to liability arising out of 'your work' . . . by or for you" (*id.*). The carpentry subcontractor further subcontracted work to the employer of the injured plaintiff. This Court held that the additional insured clause was sufficiently broad to cover the situation. That is, given the relationship between the carpentry subcontractor and the injured plaintiff's employer, the Court implicitly found the injured plaintiff's presence at the job site and his injury to have arisen out of the operations of the carpentry subcontractor.

That, of course, is not the case here. Karo, Cosentino's employer, is not a subcontractor of Alfa, Beacon's named insured. In fact, Karo was BP's subcontractor. Thus, Karo's presence on the job site, and hence, plaintiff's presence, had no connection, contractual or otherwise, with Alfa's presence or work. Cosentino's presence at the job site was in furtherance of BP's operations, not Alfa's. Therefore, *Structure Tone* lends no support to BP's arguments. As *AIU* clearly shows, this Court makes a clear distinction between the applicability of the "arising out of" language in the additional insured endorsement in the policy of an injured party's employer as opposed to that of a subcontractor, such as Alfa, which holds no relationship to the injured party.

Similarly, *Pavarini Constr. Co. v Liberty Mut. Ins. Co.* (270 AD2d 98 [2000]), relied upon by the majority, involved a decla-

ration of a defense obligation to a contractor as an additional insured under the insurance policy of the injured plaintiff's employer. The Court found that the injury "clearly falls within the general scope of the policy's coverage for bodily injury arising out of the primary insured's work for the additional insureds" (*id.* at 99). Thus, the additional insured's status was unconditional. Only an exclusion for the additional insured's own negligence was left open for resolution in the underlying trial. That is clearly not the case here.

The majority seeks to avoid this Court's holding in *AIU* and the clear and unambiguous language of the policy by invoking the well-established rule that "an insurer's duty to defend is broader than its duty to indemnify" (*General Motors Acceptance Corp. v Nationwide Ins. Co.*, 4 NY3d 451, 456 [2005], citing *Fitzpatrick v American Honda Motor Co.*, 78 NY2d 61, 65-66 [1991]). In so doing, the majority confuses an insurer's duty owed to its named insured with the duty owed, as here (and as the motion court found) to a putative additional insured. *Fitzpatrick* and its progeny (*see e.g. Automobile Ins. Co. of Hartford v Cook*, 7 NY3d 131 [2006]; *Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 98 NY2d 435 [2002]; *Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640 [1993]) all involve disclaimers of coverage as against the insurers' direct insureds. Conditional insured coverage was not at issue. No one challenges an insurer's broad duty to defend its named insured, whose status as an insured is not conditional. In the case of BP's coverage as an additional insured, however, BP must meet the condition precedent set forth in Beacon's additional insured endorsement before the endorsement, and hence, coverage, is triggered.

The most recently decided case cited by the majority for the proposition that the duty to defend is broader than the duty to indemnify (*Automobile Ins. Co. of Hartford v Cook, supra*) also involves a coverage question with respect to a named insured under a policy (in that case, a homeowner's policy), not, as here, a putative additional insured. The insured had shot and killed someone in the course of a dispute and the administrator of the victim's estate sued the insured for wrongful death, alleging negligence, inter alia. The insurer disclaimed coverage. In the subsequent action for a declaration as to the duty to defend, the insurer raised two coverage claims: whether an "occurrence" under the policy terms was involved, and whether the "expected or intended" injury exclusion applied (*id.* at 136). Like *Fitz-*

*patrick* and its progeny, *Automobile Ins.* involves a named insured, not conditional, additional insured coverage, and the well-established rule—an insurer's duty to defend is broader than its duty to indemnify—has unquestioned application.

The majority, in support of its position, cites this Court's decisions in *79th Realty Co. v X.L.O. Concrete Corp.* (247 AD2d 256 [1998]) and *City of New York v Consolidated Edison Co. of N.Y.* (238 AD2d 119 [1997]),¹ both interpreting language in an additional insured provision similar to that involved here. Although standing for the proposition that the duty to defend is not affected by the possibility that the underlying action will result or has already resulted in a factual determination absolving the named insured of any liability, thereby relieving the insurer of the duty to indemnify, these cases should yield in their precedential value to the subsequently decided *AIU* case. *AIU* carefully delineated the distinction between the additional insured provision in the policy of an employer whose employee is the injured party, and the same or similar provision in the policy of a contractor who is not the employer (292 AD2d at 278-279) and whose status as an additional insured is limited to and triggered by liability arising out of the named insured's work or, as here, operations.

Ultimately, the majority rests its case on *Pecker Iron Works of N.Y. v Traveler's Ins. Co.* (99 NY2d 391 [2003]), in which the Court of Appeals, quoting *Del Bello v General Acc. Ins. Co. of Am.* (185 AD2d 691, 692 [1992], quoting Rubin, Dictionary of Insurance Terms 7 [Barron's 1987]), stated that the term "[a]dditional insured" has a "well-understood meaning" in the insurance industry as an "entity enjoying the same protection as the named insured" (99 NY2d at 393 [internal quotation marks omitted]). *Pecker* dealt with the issue of whether a promise to provide additional insurance coverage in a liability policy was satisfied by the procurement of a policy providing such coverage, but on an excess basis. *Del Bello*, cited in support of the proposition that an additional insured "enjoy[s] the same protection as the named insured," had to do with a special multiperil policy issued to a tenant that included general liability and fire and contents coverage as well as an additional insured endorsement covering the landlord, who sought coverage for

---

1. The majority notes that the dissenter here was a member of the *Consolidated Edison* court. Whatever the majority's point, that the dissenter now views the matter differently may well be a measure of his capacity for growth.

fire damage. After the loss, the insurer sought to limit the additional insured coverage to the liability section of the policy. In holding the insurer liable for the landlord's fire loss, the Court found that it was uncontroverted that the insurer's agent had sought fire and property damage protection for the landlord as an additional insured and, in so finding, described "additional insured" in the manner quoted. That handy description, easily applicable to the facts of *Del Bello*, where the landlord's status as an additional insured was never at issue, has no application here.

Nor is *Pecker*, which adopted *Del Bello*'s description of an additional insured, relevant here. In *Pecker*, there was no challenge to the contractor's status as an additional insured; the only issue was whether the coverage afforded it as an additional insured was primary, as Pecker claimed, or excess, as the insurer argued.[2] Here, absent a finding of its vicarious liability arising out of Alfa's work, BP, unlike the subcontractor in *Pecker*, does not enjoy additional insured status.

The majority's insistence that Beacon undertake BP's defense at this stage of the litigation, notwithstanding BP's unresolved status as an additional insured, is puzzling. As noted in *Kajima Constr. Servs. v CATI, Inc.* (302 AD2d 228, 229 [2003]), the oft-stated rule that the duty to defend is greater than the duty to indemnify "is not unyielding but rather one of expedience." It finds no basis in the policy text. Rather, it represents a judicial interpretation of the defense obligation fashioned to protect a party with insurance who, because it is engaged with its insurer in a coverage dispute, would otherwise be without defense coverage in a pending litigation. That is not the case here. As in *Kajima*, BP, the party seeking additional insured coverage, is already being afforded a defense, presumably by its own insurer. Thus, there is no practical need for Beacon to contribute to that effort, given that the issue of coverage with respect to indemnity is necessarily deferred pending a determination of liability in the underlying action. That determination will also resolve the issue of defense coverage. As noted in *Kajima*, there is here the "unseemly" spectacle of having Beacon, at this juncture, underwrite the defense expenses of BP, whose attorneys will undoubtedly endeavor in the underlying action to cast Beacon's

**2.** The same issue was posed and decided in *Kwoksze Wong v New York Times Co.* (297 AD2d 544 [2002]), also relied upon by the majority. *Wong* fails to advance the majority's position any more than *Pecker* does.

named insured, Alfa, as the party responsible for Cosentino's injuries (see id.).[3] Such a result is absurd.

The majority's response to the spectacle of compelling Alfa's insurer to pay BP's legal expenses so that BP can saddle Alfa with the loss is to observe that such an anomaly is a "frequent scenario" in litigation.[4] If it is, the practice should not be extended to a situation where, as here, the party being so indemnified is already covered by insurance for such defense expenses and, in turn, that party's standing as an additional insured entitled to a defense is still subject to ultimate resolution in a pending action.

Since, under the foregoing analysis, Beacon's obligation to defend BP has not been established and must await resolution of the liability question at the trial of the underlying action, there is no need to reach the issue of the application and apportionment of its coverage with any other policies covering a liability verdict. At this point, the issue is not ripe for adjudication.

I would reverse the order appealed.

GONZALEZ and SWEENY, JJ., concur with FRIEDMAN, J.P.; SULLIVAN and CATTERSON, JJ., dissent in a separate opinion by SULLIVAN, J.

Order, Supreme Court, New York County, entered October 1, 2004, modified, on the law, to further declare that, as between Beacon's policy and any policy covering BP as named insured, any coverage Beacon's policy affords BP in the *Cosentino* action is primary, and otherwise affirmed, with costs in favor of BP Air Conditioning Corp.

---

**3.** We note that Alfa, as part of its subcontract with BP, was required, in addition to its insurance procurement obligation, to indemnify BP "[t]o the fullest extent permitted by law" against any and all claims for bodily injury caused, in whole or part, by the negligence of Alfa, "any sub-contractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable." This obligation, which, on its face, provides as much and perhaps even broader indemnification than additional insured coverage, has not been asserted. Under the motion court's holding and the majority's view, its assertion would, in any event, be barred by the antisubrogation rule (*Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465, 472 [1986]).

**4.** While it may be standard practice in major league baseball for a team to pay a portion of the salary of a traded player who will then compete against that team, the courts, charged with the obligation to avoid lawyer conflicts of interest and the appearance of impropriety, should not countenance such a cavalier blurring of discrete and antagonistic interests.