[850 NE2d 1152, 818 NYS2d 176]

AUTOMOBILE INSURANCE COMPANY OF HARTFORD, Respondent, v ALFRED S. COOK, Appellant, and VICTORIA PRUYN, as Administratrix of the Estate of RICHARD A. BARBER, Deceased, and as Parent and Natural Guardian of ANDREW H. PRUYN, an Infant, Respondent.

Argued and submitted May 3, 2006; decided June 8, 2006

**POINTS OF COUNSEL**

*Roche, Corrigan, McCoy & Bush,* Albany (*Robert P. Roche* of counsel), for appellant. I. A review of the decisions in other jurisdictions clearly indicates a move by the courts to adopt a more sensible interpretation of the definitions of "occurrence" and "expected or intended" and allow for self-defense when properly raised by a homeowner. (*State Farm Fire & Cas. v Dunlavey,* 197 F Supp 2d 183; *Allstate Ins. Co. v Takeda,* 243 F Supp 2d 1100; *Tower Ins. Co., Inc. v Judge,* 840 F Supp 679.) II. The State of New York has examined the issue in lower courts but has yet definitively to have the Court of Appeals state its position on whether or not an act of self-defense is an exception to the exclusion clause in the liability policy as urged by respondent here. (*Michigan Millers Mut. Ins. Co. v Christopher,* 66 AD2d 148; *Miller v Continental Ins. Co.,* 40 NY2d 675; *Utica Mut. Ins. Co. v Cherry,* 38 NY2d 735; *Slayko v Security Mut. Ins. Co.,* 98 NY2d 289; *McGroarty v Great Am. Ins. Co.,* 36 NY2d

358; *Allstate Ins. Co. v Zuk,* 78 NY2d 41; *Deetjen v Nationwide Mut. Fire Ins. Co.,* 302 AD2d 350; *Frontier Insulation Contrs. v Merchants Mut. Ins. Co.,* 91 NY2d 169; *Continental Cas. Co. v Rapid-American Corp.,* 80 NY2d 640; *Barry v Romanosky,* 147 AD2d 605.)

*Michael J. Hutter,* Albany, and *Majewski & Associates,* Melville, for Automobile Insurance Company of Hartford, respondent. I. Plaintiff may be found as a matter of law to have no duty to defend or indemnify its insured on this summary judgment motion with a showing that there is no possible factual or legal basis upon which it may be concluded that the shooting death of Richard Barber, concededly the result of its insured's intentional shooting of Barber with the intent to injure him, was caused by an "occurrence," defined by the policy as an "accident," and thus within the policy's liability coverage, and/or was not "expected or intended" by Alfred Cook, and thus excluded from coverage under a policy exclusion. (*Allstate Ins. Co. v Mugavero,* 79 NY2d 153; *Pistolesi v Nationwide Mut. Fire Ins. Co.,* 223 AD2d 94, 88 NY2d 816; *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.,* 98 NY2d 208; *Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.,* 5 NY3d 157; *Caporino v Travelers Ins. Co.,* 62 NY2d 234; *Breed v Insurance Co. of N. Am.,* 46 NY2d 351; *State of New York v Home Indem. Co.,* 66 NY2d 669; *Michaels v City of Buffalo,* 85 NY2d 754; *New York Cas. Ins. Co. v Ward,* 139 AD2d 922; *Continental Cas. Co. v Rapid-American Corp.,* 80 NY2d 640.) II. Since plaintiff's proof establishes as a matter of law that no "accident" caused Richard Barber's bodily injury, as required by the express terms of its policy for coverage, and that the policy's exclusion for bodily injury "expected or intended" is applicable, no coverage is afforded under its policy. (*Jubin v St. Paul Fire & Mar. Ins. Co.,* 236 AD2d 712; *Agoado Realty Corp. v United Intl. Ins. Co.,* 95 NY2d 141; *Miller v Continental Ins. Co.,* 40 NY2d 675; *Northville Indus. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.,* 89 NY2d 621; *McGroarty v Great Am. Ins. Co.,* 36 NY2d 358, 874; *Messersmith v American Fid. Co.,* 232 NY 161; *Ward v Security Mut. Ins. Co.,* 192 AD2d 1000; *State Farm Fire & Cas. Co. v Torio,* 250 AD2d 833; *Allstate Ins. Co. v Ruggiero,* 239 AD2d 369; *Allstate Ins. Co. v Bostic,* 228 AD2d 628.) III. Coverage cannot be created on the basis that Alfred Cook's intentional shooting of Richard Barber with the intent to injure him was an act of self-defense. (*Aromin v State Farm Fire & Cas. Co.,* 908 F2d 812; *Handlebar, Inc. v Utica First Ins. Co.,* 290 AD2d 633, 98 NY2d 601; *Peters v State Farm Fire & Cas. Co.,* 306 AD2d

817, 100 NY2d 634; *Slayko v Security Mut. Ins. Co.*, 98 NY2d 289; *Allstate Ins. Co. v Mugavero,* 79 NY2d 153; *Pennsylvania Millers Mut. Ins. Co. v Rigo,* 256 AD2d 769; *Allstate Ins. Co. v Zuk,* 78 NY2d 41; *Matter of Perry v Blair,* 64 AD2d 870; *Herndon v City of Ithaca,* 43 AD2d 634; *State Farm & Cas. Co. v Sanders,* 805 F Supp 1453.) IV. Plaintiff is entitled to a judgment declaring that it is not obligated to defend and indemnify Alfred Cook in the *Pruyn v Cook* action. (*Pennsylvania Millers Mut. Ins. Co. v Rigo,* 256 AD2d 769; *Home Mut. Ins. Co. v Lapi,* 192 AD2d 927.)

*Tabner, Ryan and Keniry, LLP,* Albany (*Benjamin F. Neidl* and *William F. Ryan, Jr.,* of counsel), for Victoria Pruyn, respondent. The trial court was correct to deny the insurer's motion for summary judgment, and the Appellate Division was in error to reverse, because while defendant's conduct was tortious, a reasonable insured could have expected the incident to be covered by the policy as an unexpected, unintended "accident." (*Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.,* 60 NY2d 390; *Miller v Continental Ins. Co.,* 40 NY2d 675; *McGroarty v Great Am. Ins. Co.,* 36 NY2d 358; *Fowler v Risedorph Bottling Co.,* 175 App Div 224; *Messersmith v American Fid. Co.,* 232 NY 161; *Lachter v Insurance Co. of N. Am.,* 145 AD2d 540; *Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304; *Munzer v St. Paul Fire & Mar. Ins. Co.,* 145 AD2d 193; *Continental Cas. Co. v Rapid-American Corp.,* 80 NY2d 640; *Slayko v Security Mut. Ins. Co.,* 98 NY2d 289.)

### OPINION OF THE COURT

CIPARICK, J.

The issue in this declaratory judgment action is whether the insurer has a duty to defend its policyholder under his homeowner's insurance policy in an underlying wrongful death action, resulting from a shooting committed in self-defense. We conclude that the insurer here is obligated to defend under the policy.

On February 20, 2002, Alfred Cook shot and killed Richard Barber inside his home. At the depositions, the witnesses testified that the two men had known each other for many years, but became involved in a dispute relating to their business relationship. Barber, weighing about 360 pounds, was approximately three times Cook's size and had previously attacked the smaller man, causing injury to his leg. On the morning of February 20, Barber and another man were outside of Cook's home, hurling

objects at the house. They left without further incident, but Barber returned later that day with two other companions. When Cook, who was standing outside his door, saw them approaching, he asked a person visiting him to leave because he expected trouble. He returned inside, locked the door and, anticipating a confrontation, retrieved a .25 caliber handgun from his bedroom.

There was further testimony that the group burst into Cook's home. The four individuals gathered in the kitchen where Barber began demanding money from Cook while pounding his fists on the kitchen table. Cook, alarmed, drew his gun and demanded that they leave his house. Barber apparently laughed at the small size of the pistol, at which point Cook withdrew to his bedroom for a larger weapon. He picked up a loaded, 12 gauge shotgun and stood in his living room at the far end of his pool table. Cook again ordered them to leave the house. Although Barber started to head toward the door with his companions, he stopped at the opposite end of the pool table, turned to face Cook and told his companions to take anything of value, and that he would meet them outside because he had some business to attend to. When Barber menacingly started advancing toward Cook, Cook warned him that he would shoot if he came any closer. Cook aimed his gun toward the lowest part of Barber's body that was not obscured by the pool table—his navel. When Barber was about one step away from the barrel of the gun, Cook fired a shot into Barber's abdomen. Barber died later that day at a hospital.

Cook was indicted for intentional and depraved indifference murder. At trial he raised a justification defense. A jury acquitted him of both murder counts and of the lesser included offenses of manslaughter in the first and second degrees.

The administrator of Barber's estate, Victoria Pruyn, commenced a wrongful death action against Cook. The first cause of action alleges that "[i]njury to the decedent and the decedent's death were caused by the negligence of the defendant, Alfred S. Cook." Specifically, the complaint alleges that Cook's behavior "consisted of negligently playing with a loaded shotgun; negligently pointing that shotgun at the abdomen of the decedent; negligently discharging that shot gun into the decedent's abdomen; and engaging in unruly behavior at the Defendant's residence on February 20, 2002." In a separate cause of action, the complaint alleges that Cook intentionally shot Barber causing Barber's death. At his examination before

trial, Cook testified, "I knew the [shot from the] shotgun would injure Mr. Barber because I had to stop him, but I did not anticipate it killing him."

Cook sought homeowner's personal liability coverage from his insurer, the Travelers Insurance Company, appearing in this action as the Automobile Insurance Company of Hartford. Hartford disclaimed coverage explaining that the incident was not an "occurrence" within the meaning of the policy and furthermore that the injury inflicted upon Barber fell within a policy exclusion, as it was "expected or intended" by Cook. The insurer commenced this declaratory judgment action against both Cook and Pruyn for a declaration that it was not obligated to defend or indemnify Cook in the wrongful death action. After depositions, Hartford moved for summary judgment and Cook cross-moved, seeking a declaration that the insurer was required to defend and indemnify him in the underlying tort action.

Supreme Court denied Hartford's motion and granted Cook's cross motion to the extent of declaring that the insurer had a duty to provide a defense for Cook in the wrongful death action. The court found that Hartford failed to prove that the incident was not an occurrence covered by the policy or that Cook's actions were subject to the exclusion for injuries expected or intended by the insured. The court held that the insurer had a duty to defend because the negligence allegations in the complaint could potentially be proven at trial.

The Appellate Division reversed, concluding that since Cook intentionally shot Barber, his actions could not be considered an accident or "occurrence" and, thus, were not covered by the policy (21 AD3d 1155, 1157 [2005]). The Court also noted that the acts came within the policy exclusion for bodily injury "expected or intended" by the insured (*id.* at 1158). One Justice dissented and voted to affirm, holding that if the negligence claim were established, Cook's actions would be covered by the policy. This Court granted leave to appeal and we now reverse.

Our inquiry is twofold: whether an "occurrence" is involved that gives rise to policy coverage and, if so, whether it falls within the "expected or intended" injury policy exclusion. As relevant here, the insurance policy defines an "occurrence" as "an accident . . . which results, during the policy period, in . . . bodily injury." The policy also contains an exclusion for bodily injury "which is expected or intended by any insured." The policy represents that it will provide a defense and pay—up to

the policy limits—the amounts for which the insured is legally liable, "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury . . . caused by an occurrence to which this coverage applies, even if the claim or suit is false."

It is well settled that an insurance company's duty to defend is broader than its duty to indemnify. Indeed, the duty to defend is "exceedingly broad" and an insurer will be called upon to provide a defense whenever the allegations of the complaint "suggest . . . a reasonable possibility of coverage" (*Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 648 [1993]). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be" (*Ruder & Finn v Seaboard Sur. Co.*, 52 NY2d 663, 670 [1981]).

The duty remains "even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered" (*Fitzpatrick v American Honda Motor Co.*, 78 NY2d 61, 63 [1991]). For this reason, when a policy represents that it will provide the insured with a defense, we have said that it actually constitutes "litigation insurance" in addition to liability coverage (*see Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 310 [1984], quoting *International Paper Co. v Continental Cas. Co.*, 35 NY2d 322, 326 [1974]). Thus, an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course.

When an insurer seeks to disclaim coverage on the further basis of an exclusion, as it does here, the insurer will be required to "provide a defense unless it can 'demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation' " (*Allstate Ins. Co. v Mugavero*, 79 NY2d 153, 159 [1992] [citation omitted]). In addition, exclusions are subject to strict construction and must be read narrowly (*see Seaboard*, 64 NY2d at 311).

An examination of the wrongful death complaint leads to the conclusion that Cook's claim is covered by the policy. Among other things, the complaint alleges that Cook negligently caused Barber's death. If such allegations can be proven, they would fall within the scope of the policy as a covered occurrence. The policy defines an "occurrence" as an accident, and we have previously defined the term "accident," albeit in a life insur-

ance policy, "to pertain not only to an unintentional or unexpected event which, if it occurs, will foreseeably bring on death, but equally to an intentional or expected event which unintentionally or unexpectedly has that result" (*Miller v Continental Ins. Co.*, 40 NY2d 675, 678 [1976]). Thus, if Cook accidentally or negligently caused Barber's death, such event may be considered an "occurrence" within the meaning of the policy and coverage would apply. The factfinder in the underlying action may indeed ultimately reject the notion that Cook negligently caused Barber's death given the evidence of intentional behavior, but that uncertain outcome is immaterial to the issue raised here—the insurer's duty to defend in an action where it is alleged that the injury was caused by the negligent conduct of the insured.

Turning to the exclusion—as an allegation of negligence implies an unintentional or unexpected event, Hartford necessarily has failed to demonstrate that the allegations of the complaint are subject to no other interpretation than that Cook "expected or intended" the harm to Barber (*compare Mugavero*, 79 NY2d 153 [1992] [where the harm caused was inherent in the nature of the acts alleged to be committed by the insured—child sexual abuse—and fell within the homeowners' insurance policy's exclusion]). Hartford is thus required to defend Cook in the underlying wrongful death action.

In light of this disposition, it is unnecessary to address the remaining arguments—specifically, whether acts of self-defense are intentional acts precluding coverage under a homeowner's policy. Suffice it to say that a reasonable insured under these circumstances would have expected coverage under the policy. As to a duty to indemnify, that determination will abide the trial.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the order of Supreme Court should be reinstated.

Chief Judge KAYE and Judges G.B. SMITH, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order reversed, etc.