OPINION OF THE COURT
Bernadette T. Clark, J.
Before the court is a motion for summary judgment brought by New York Central Mutual Fire Insurance Company, defendant, against plaintiff Mark Leo in an underlying declaratory judgment action involving the issue of insurance coverage. The defendant is seeking a determination that it is not required to indemnify the plaintiff. The plaintiff has filed a cross motion for summary judgment seeking a determination that the defendant is obligated to indemnify the plaintiff.
This case has a unique history. On or about May 20, 2005, the plaintiff was involved in a violent altercation with Anthony J. Sciortino. In the course of the altercation, the plaintiff struck Sciortino in the head and neck with a baseball bat, and he subsequently died. The plaintiff was indicted for this incident for manslaughter in the second degree. At trial he asserted the defense of justification, and was acquitted of the charge. On or about April 28, 2006, the Sciortino estate brought a wrongful death personal injury action against the plaintiff. Plaintiffs insurer initially disclaimed coverage and defense, although ultimately it did provide a defense for the plaintiff. However, it has steadfastly denied any duty to indemnify the plaintiff.
As a result of the disclaimer, on or about October 2, 2006 the plaintiff commenced a declaratory judgment action, seeking among other things a declaration by the court that the defendant is required to afford indemnity to the plaintiff in the underlying personal injury action, pursuant to the terms of the *173 policy and contract of insurance in issue. On or about November 29, 2010, the wrongful death/personal injury action came on for trial before the Honorable Norman I. Siegel. Prior to commencement of the trial, the parties negotiated a settlement and a stipulation was placed on the record, and memorialized in a written stipulation and order, signed by the parties on February 22, 2011, and “So Ordered” by Justice Siegel on April 5, 2011.
The stipulation settled the wrongful death action for $50,000. No findings were made as to theory upon which the award was made. The stipulation further called for the plaintiff to assign his declaratory judgment action to the estate, and that counsel for the estate would prosecute the matter on behalf of the estate. The stipulation further called for the following:
“5. If it is found after the final determination by way of any and all appeals in [the declaratory judgment action] that Mark A. Leo’s conduct on May 20, 2005 was negligent then New York Central Mutual Fire Insurance Company agrees to pay its full policy limits of Two Hundred Thousand Dollars ($200,000.00) to the Estate of Anthony J. Sciortino, Jr., deceased.
“6. If it is found after final determination by way of any and all appeals [in the declaratory judgment action] that Mark A. Leo’s conduct on May 20, 2005 was intentional, New York Central Mutual Fire Insurance Company will pay nothing, leaving the Estate of Anthony J. Sciortino, Jr., deceased only with Fifty Thousand Dollars ($50,000.00) payable by Mark A. Leo.”
Thereafter, on April 18, 2011 Justice Siegel recused and the case was transferred to this court.
Facts
The plaintiff has testified twice with regard to these events, first in his criminal trial on or about April 28, 2006, and again in his deposition in the declaratory judgment action on June 11, 2013. In his criminal trial, the plaintiff testified to the events leading up to the altercation with Sciortino, and then described the specific incident. As to the physical altercation, he testified that Sciortino, while holding a metal bar, swung it at plaintiff, who ducked but was grazed by the bar on the top of his head. Sciortino then swung again, but missed the plaintiff who had ducked. The plaintiff then swung the baseball *174 bat he was holding and hit Sciortino in the back of the head. He testified that he swung the bat in order to defend himself and the bat came down on his head. Sciortino then continued to swing at him, and the plaintiff hit him a second time in the back of the neck, after which Sciortino went down. Plaintiff testified that prior to the confrontation, he had retrieved a baseball bat from his garage and put it in the back of his vehicle, although he “didn’t intend to have to use that bat.” He took it because he “felt the need that something was going to happen and I needed to—I didn’t want to be caught empty handed.” Further, he testified that “Well, I say I was petrified for my life when this thing happened. When he—I just had a gut feeling that this guy was incredibly irate and upset about something and I just had a feeling that something was going to happen.”
In the declaratory judgment case deposition, the plaintiff stated somewhat similarly that he got the bat because he “just wanted to have something to defend [himself] in case—my initial intent was to talk to him, you know, and—to try to reason with him, but I wasn’t gonna be, you know—I wanted to make sure I had some way to protect myself.” He testified that he was not getting the bat to hit Sciortino with it. He testified that as the two approached each other, he said “Tony, don’t” or something to that effect, but Sciortino kept coming and then he swung a metal pipe (later identified as a metal bar) at him. The plaintiff ducked and was grazed on the top of his head. Sciortino then swung the pipe back. The plaintiff then hit Sciortino with the bat in the head or the back of the neck. The plaintiff hit him twice in the head area. The plaintiff admitted that “obviously if somebody was hit in the head with a baseball bat, obviously they would be hurt.” He also acknowledged that “if somebody was hit hard enough—obviously if somebody’s hit hard enough with [a bat], it would—there’s always a possibility it could kill them.”
On examination by the estate’s attorney, plaintiff stated that he had the bat in his hands because he “just wanted to make sure that I was able to defend myself.” Further, during the incident, he was trying to defend himself, and he did not intend to hurt or injure Sciortino. In particular, he testified that at the time he was swinging the bat, it was not his intent to hurt or kill Sciortino, and that he was just defending himself. On further examination by the defendant’s counsel, plaintiff said “it certainly was not his intent to hit [Sciortino] in the head *175 with the baseball bat,” although he admitted that he did hit him in the head with the bat. In response to a question as to whether there was anything which prevented him from hitting Sciortino in the arms with the bat, plaintiff responded, “To be honest with you, I didn’t even think about where—or if I even had to hit him.”
On further examination by the estate’s counsel, in answering leading questions, the plaintiff indicated that he just swung the bat and that he did not intend to swing and hit him in the head, and also that when he was swinging the bat, it was not his intention to cause harm. Finally, counsel asked plaintiff if he was swinging for him to get away, and the plaintiff answered “Correct.”
Any analysis of coverage must start with the policy language. In the policy at issue, Section II—Liability Coverages, A. Coverage E—Personal Liability states as follows:
“If a claim is made or a suit is brought against an ‘insured’ for damages because of ‘bodily injury’ or ‘property damage’ caused by an ‘occurrence’ to which this coverage applies, we will:
“1. Pay up to our limit of liability for the damages for which an ‘insured’ is legally liable. Damages include prejudgment interest awarded against as ‘insured.’ ”
Further the term “occurrence” is defined as an “accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. ‘Bodily injury,’ or b. ‘Property damage.’ ” Further, the initial policy contained an exclusion:
“E. Coverage E—Personal Liability and Coverage F—Medical Payments to Others which states as follows: Coverages E and F do not apply to the following:
“1. Expected or Intended Injury “ ‘Bodily injury’ or ‘Property damage’ which is expected or intended by an ‘insured’ even if the resulting ‘bodily injury’ or ‘property damage’:
“a. Is of a different kind, quality or degree than initially expected or intended; or “b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.
“However, this Exclusion E.l does not apply to *176 ‘bodily injury’ resulting from the use of reasonable force by an ‘insured’ to protect persons or property.”
However, this exclusionary language was subsequently amended to state as follows:
“Section II—Exclusions
“E. Coverage E—Personal Liability and Coverage—F Medical Payments to Others
“Paragraph E.l. Expected Or Intended Injury is deleted and replaced by the following:
“1. Expected Or Intended Injury
“ ‘Bodily Injury’ or ‘Property damage’ which is expected or intended by an ‘insured.’ ”
In the plaintiff’s action for a declaratory judgment, he asserts that the claims alleged by the estate constituted an “occurrence” under the policy, in that, among other things, claims for damages caused by the insured’s acting in self-defense are covered. Further, he alleges that claims for bodily injury caused by the insured acting in self-defense are not properly excluded from coverage as being “expected” or “intended” by an insured.
In the defendant’s motion for summary judgment, it asserts essentially two basic points. First, the defendant argues that the coverage under the policy only applies where the occurrence was an “accident.” The term “accident” is not defined in the policy, therefore judicial construction of the term applies. The defendant asserts that New York courts have regularly held that in deciding whether a loss was the result of an “accident,” it must be determined from the point of view of the insured whether the loss was unexpected, unusual, and unforeseen. Also, whether the term “accident” is applicable to the situation must be determined from the “transaction as a whole.” Based on the deposition testimony, the defendant argues that the injuries suffered by Mr. Sciortino can not be considered an “accident.”
Second, the defendant argues that the facts fall into the exclusion for bodily injury that is “expected or intended” by the insured.
In opposition to the defendant’s motion and in support of his cross motion, the plaintiff asserts that his actions in self-defense were unexpected and unintended, and thus fall within the definition of an “accident.” He cites to his deposition testimony and trial testimony wherein he indicates that it was not his intent to hurt or kill Sciortino, but rather it was to *177 defend himself from being injured. Plaintiff alleges that in looking at the totality of the circumstances and the transaction as a whole, it can be clearly seen that his actions were not intentional or expected. Similarly, he argues that the exclusion for “expected or intended” damage is inapplicable because the plaintiff acted in self-defense. At the very least, he asserts that there are issues of fact as to whether his conduct was negligent or intentional, and that the issue of indemnification must abide a trial. Finally, he argues that due to his acquittal in the criminal case based on self-defense, he is entitled to summary judgment on indemnification. The plaintiff also asserts in reply that the exclusionary language in the policy contained an exception for “ ‘bodily injury’ resulting from the use of reasonable force by an ‘insured’ to protect persons or property.” The defendant counters that this seeming exception to the exclusion for self-defense was deleted from the policy which was in effect at the time of the incident.
Analysis
Although the term “occurrence” in the policy is defined as an “accident,” there is no definition of “accident” in the subject policy. Thus that term is subject to judicial interpretation. As instructed by the Court of Appeals, an “occurrence” is considered an “accident” if “ ‘from the point of view of the insured [the incident resulting in the injury] was unexpected, unusual and unforeseen’ ” (Miller v Continental Ins. Co., 40 NY2d 675, 677 [1976]; Automobile Ins. Co. of Hartford, v Cook, 7 NY3d 131, 137-138 [2006]). Further, the term “accident” has been interpreted “ ‘to pertain not only to an unintentional or unexpected event which, if it occurs, will foreseeably bring on death, but equally to an intentional or expected event which unintentionally or unexpectedly has that result’ ” (Cook, 7 NY3d at 138, quoting Miller, 40 NY2d at 678). “However, when the damages alleged in the complaint ‘are the intended result which flows directly and immediately from [the insured’s] intentional act, rather than arising out of a chain of unintended though foreseeable events that occurred after the intentional act’, there is no accident, and therefore, no coverage” (Salimbene v Merchants Mut. Ins. Co., 217 AD2d 991, 994 [4th Dept 1995], quoting Mary & Alice Ford Nursing Home Co. v Fireman’s Ins. Co. of Newark, N.J., 86 AD2d 736, 737 [3d Dept 1982]; see Allegany Co-op Ins. Co. v Kohorst, 254 AD2d 744 [4th Dept 1998]). In addition, when determining whether the *178 term “accident” is applicable to a given situation, the “transaction as a whole” should be analyzed (McGroarty v Great Am. Ins. Co., 36 NY2d 358, 364 [1975]). “ ‘The character of the liability is not to be determined by analyzing the constituent acts which, in combination, make up the transaction, and viewing them distributively. It is determined by the quality and purpose of the transaction as a whole’ ” (McGroarty, 36 NY2d at 364, quoting Messersmith v American Fid. Co., 232 NY 161, 165 [1921]). Whether an occurrence constitutes an “accident” is generally for the trier of fact to determine (see Lachter v Insurance Co. of N. Am., 145 AD2d 540 [2d Dept 1988]).
With regard to the exclusion for bodily injury which is expected or intended by the insured, the dispositive inquiry is whether the harm that resulted could have been other than harm intentionally caused within the meaning of the policy exclusion (Allstate Ins. Co. v Mugavero, 79 NY2d 153, 159 [1992]). However, if there is no intent to injure, the intentional act exclusion applies only if the injury is “inherent in the nature” of the wrongful act (Slayko v Security Mut. Ins. Co., 98 NY2d 289, 293 [2002] [internal quotation marks omitted], quoting Mugavero, 79 NY2d at 161). Yet because “insurable [accidents] may flow from ‘intentional causes,’ ” when evaluating whether an injury is inherent in the nature of the wrongful act, more than a mere causal connection between the intentional act and the resulting harm must be shown to prove the harm was intended (see Slayko, 98 NY2d at 293, quoting McGroarty, 36 NY2d at 364).
In the case of an unprovoked assault, the case law is fairly clear that the harm which is caused is “ ‘inherent in the nature of the act [committed] ... so that whatever injuries resulted . . . were intentionally caused within the meaning of the policy’ ” (Jacobs v Aetna Cas. & Sur. Co., 216 AD2d 942, 943 [4th Dept 1995], quoting Monter v CNA Ins. Cos., 202 AD2d 405, 406 [2d Dept 1994]; see Allstate Ins. Co. v Schimmel, 22 AD3d 616 [2d Dept 2005]; Tangney v Burke, 21 AD3d 367, 368 [2d Dept 2005]).
In the case at bar, there is no dispute that just prior to the confrontation with Sciortino, the plaintiff took a baseball bat from his garage and put it in the back of his vehicle, and during the altercation he retrieved the bat and struck him in the head two times, which resulted in his death. What sets this case apart from other assault and battery cases is that the plaintiff claims he acted in self-defense in striking Sciortino, *179 after Sciortino first swung a metal bar at the plaintiff. In fact, a justification defense was asserted at a criminal trial involving these facts, and the plaintiff was acquitted of manslaughter in the second degree. Of course, the acquittal has no estoppel effect in the case at bar because once properly raised, it is the People’s burden in a criminal case to disprove a justification defense beyond a reasonable doubt (see People v McManus, 67 NY2d 541, 546-547 [1986]). Clearly, the prosecution failed to meet its high burden in their case. Given the difference in the burden of proof between the matter at bar and the criminal proceeding, no collateral estoppel effect can be given to the acquittal.
Thus, the issue becomes whether the act of self-defense changes the transaction as a whole from an intentional act to that of an “accident” and an unintended and unexpected injury. New York State has not squarely addressed this issue. The Court of Appeals in Automobile Ins. Co. of Hartford v Cook (7 NY3d 131, 137-138 [2006]) in a strikingly similar case declined to address the question. The Cook Court did find, based on the allegations of negligence in the complaint that the insurer had a duty to defend the insured, and it recognized that if the insured accidentally or negligently caused the victim’s death, such an event may be considered an occurrence, prompting coverage. Further the Cook Court opined that the allegations of negligence implied an unintentional or unexpected event, and therefore, the exclusion for intentional or expected bodily harm was not a barrier to a defense of the insured (Cook, 7 NY3d at 138). Due to this disposition, the Court found it unnecessary to address whether acts of self-defense are intentional acts precluding coverage. Also, as to indemnification, the Court directed that it “abide the trial” in the underlying action (id.).
The Cook Court understandably declined to consider whether acts of self-defense are intentional and therefore preclude coverage under an insurance policy. This is because the obligation to indemnify is triggered initially by the obligation to pay a damages award which is covered under the policy (see Frontier Insulation Contrs. v Merchants Mut. Ins. Co., 91 NY2d 169, 178 [1997]). Yet, in Cook, the underlying trial had not taken place, and thus there was no obligation to pay, nor had a theory of liability been established yet. Further, the issue of self-defense was not relevant to the case at that stage. For example, if at the underlying trial in Cook intentional conduct *180 was proved, the policy exclusion would certainly preclude coverage and any resulting liability to indemnify the defendant. On the other hand, if the defendant proved his defense of self-defense, he would win the case and there would be no award made requiring indemnification.
The case at bar is in a much different procedural posture than in the Cook case. Here, there has been a stipulation awarding money damages to the estate, although the basis for the award was not decided. Thus, the issues of negligence, intentionality, and self-defense are highly relevant to resolve the coverage issue.
There do not appear to be any other New York State cases that have interpreted these policy provisions specifically in the self-defense context. There are two Fourth Department cases that seemingly have facts suggestive of self-defense or defense of others, although not labeled as such, yet the majority decision in each found for the insurer and denied a defense and indemnity. In State Farm Fire & Cas. Co. v Whiting (53 AD3d 1033 [4th Dept 2008]), in a 3-2 split, the majority found that no occurrence under the policy had taken place. It cited the insured’s deposition testimony that he intended to hit the victim, who had shoved him and was again advancing toward him, and that the insured knew when he hit the victim that he could be hurt from the punch. Although the majority apparently recognized the rule from Cook that if the insured accidentally or negligently caused the victim’s death, such an event may be considered an occurrence prompting coverage (Cook, 7 NY3d at 138), it concluded under the specific facts of the case that “there is no view of the evidence to support [the] conclusion that the result of the defendant’s intentional act of punching [the victim] in the face ‘accidentally or negligently’ caused [the victim’s] alleged injuries” (Whiting, 53 AD3d at 1035).
The Whiting minority strenuously disagreed with the majority on the issue of occurrence. It cited the Miller case, which Cook adopts, for the proposition that an “accident” is “ ‘deemed to pertain ... to an intentional or expected event which unintentionally or unexpectedly’ results in injury or death” (id. at 1036, quoting Miller, 40 NY2d at 678). In its view of the facts, the minority cited:
“Here, defendant testified at his deposition that, after hours of consuming alcoholic beverages, [the victim], one of the plaintiffs in the underlying ac *181 tion, was visibly intoxicated and unruly. [The victim] initially pushed defendant to the point of knocking him off balance, and he then charged at defendant ‘fast’ while speaking angrily, with his fists clenched. Defendant testified that, in response, he hit [the victim] because he ‘thought [he] was going to get hit.’ Defendant further testified at his deposition that his blow to [the victim] was ‘quick, nothing that I had time to prepare for’ ” (id.).
The minority concluded based on the allegations of negligence in the complaint and based on the defendant’s description of the events and actions leading up to the injuries that there was at least a duty to defend, although it set forth no opinion on the issue of indemnification, which presumably would have to abide a trial in the underlying action (id. at 1037).
In an earlier case, the Fourth Department in Peters v State Farm Fire & Cas. Co. (306 AD2d 817, 818 [4th Dept 2003]) addressed an assault with a baseball bat in the context of a policy exclusion for “bodily injury intentionally caused by an insured.” In a 3-2 split, the majority noted the insured’s deposition testimony that “in order to help extricate his brother from an altercation with [the] plaintiff, he repeatedly swung a baseball bat knowing that the bat was striking a person” (Peters, 306 AD2d at 818). Therefore, the Court reasoned that the injuries sustained as a result of the insured’s conduct can only be described as “intentionally caused” as a matter of law (id.). In a short but pointed discussion, the dissent expressed the view that the insurer had not established as a matter of law that the plaintiff’s injuries were not the result of a covered occurrence or that the policy exclusion for expected or intended injuries applied (id.). “Contrary to the majority, [the dissenters did] not believe that the testimony of [the insured supported] the conclusion that, as a matter of law, [that the insured] knew that he was striking a person when he was swinging the bat or that he ‘intended the damages’ to plaintiff” (id. at 819 [citation omitted]).
These two Fourth Department cases never mention the concept of self-defense in relation to the policy coverage or exclusions, and the Court of Appeals has left it an open question in New York. Although New York courts have not addressed self-defense in the context of an insurance policy coverage dispute, several other jurisdictions have considered the issue. In these other jurisdictions, the results are split as to whether an incident of self-defense constitutes an “accident,” *182 and whether bodily injuries inflicted therein are “expected or intended” within the meaning of a liability insurance policy. The Supreme Court of Connecticut in Vermont Mut. Ins. Co. v Walukiewicz (290 Conn 582, 966 A2d 672 [2009]) has adopted the view that acts of self-defense constitute an occurrence and the loss resulting therefrom should not be excluded. In reaching this decision, that court conducted an exhaustive survey of the law from multiple jurisdictions (see Walukiewicz, 290 Conn at 592-593, 966 A2d at 678-679 [collecting cases]). Of the cases finding actions of self-defense to be accidental, the premise of such finding is the courts’ characterization of the conduct as being “instinctive or reactive and, accordingly, unplanned and unintentional” (Walukiewicz, 290 Conn at 595, 966 A2d at 679, citing State Farm Fire & Cas. Co. v Poomaihealani, 667 F Supp 705, 708 [D Haw 1987], and Farmers & Mechs. Mut. Ins. Co. of W. Va. v Cook, 210 W Va 394, 403, 557 SE2d 801, 810 [2001]; see also Stoebner v South Dakota Farm Bur. Mut. Ins. Co., 598 NW2d 557 [SD 1999]). Another analysis for finding an act of self-defense to be an “accident” has developed by viewing the term broadly to encompass the circumstances leading to injury. In this vain, it is the “third party’s actions provoking the self-defense response [which are] the unforeseen and unexpected element in the causal chain of events making the insured’s acts in self-defense unplanned and involuntary (Walukiewicz, 290 Conn at 596, 966 A2d at 680, citing Jafari v EMC Ins. Co., 155 Cal App 4th 885, 894, 155 Cal Rptr 3d 359, 365-366 [2007], cert granted 172 P3d 401 [Cal 2007]).*
With regard to the exclusion for injury expected or intended by the insured, of the courts finding the exclusion does not apply, many have found the language “expected or intended by the insured” to require a subjective analysis (Walukiewicz, 290 Conn at 597-599, 966 A2d at 680-681; Cook, 210 W Va at 400, 557 SE2d at 807). In this regard then, several courts have observed that the actor’s main intent in committing acts of self-defense is to protect himself, and not to cause injury (Walukiewicz, 290 Conn at 599, 966 A2d at 682; Transamerica Ins. Group v Meere, 143 Ariz 351, 358, 694 P2d 181, 188 [1984]; Allstate Ins. Co. v Novak, 210 Neb 184, 192-193, 313 NW2d *183 636, 640-641 [1981]; Poomaihealani, 667 F Supp at 708-709). Thus, given that there is a lack of intent to cause the injuries complained of, self-defense does not fall into the exclusion. Other courts have observed that in order to trigger the exclusion, the insured must intend to bring about a result which invades the interests of another in a way that the law forbids. But because legitimate acts of self-defense are not forbidden by the law, no wrongful conduct has taken place, and therefore the exclusion does not apply (Meere, 143 Ariz at 359, 694 P2d at 189; Cook, 210 W Va at 402, 557 SE2d at 809; Poomaihealani, 667 F Supp at 709; Deakyne v Selective Ins. Co. of Am., 728 A2d 569, 573 [Del Super 1997]).
Several courts have determined that the acceptance of coverage for acts of self-defense is consistent with public policy considerations. Generally, intentional acts are excluded because insurance companies set their premium rates based on random occurrences of insurable events, and if an insured deliberately controls the occurrence of these events through committing intentional acts, the liability of the insurance company would be impossible to calculate (Walukiewicz, 290 Conn at 599, 966 A2d at 682, citing Cook, 210 W Va at 403, 557 SE2d at 810; Safeco Ins. Co. of Am. v Tunkle, 997 F Supp 1356, 1360 [D Mont 1998]; Poomaihealani, 667 F Supp at 709). Thus, in essence, the exclusion acts as a shield preventing individuals from insuring against their own anticipated intentional misconduct (Poomaihealani, 667 F Supp at 709; Preferred Mut. Ins. Co. v Thompson, 23 Ohio St 3d 78, 81, 491 NE2d 688, 690-691 [1986]). Allowing one to receive coverage in this circumstance would remove the usual disincentive from committing an intentional tort (Thompson, 23 Ohio St 3d at 81, 491 NE2d at 690-691). Yet, the nature of legitimate self-defense is “instinctive, spontaneous and unplanned” (Walukiewicz, 290 Conn at 600, 966 A2d at 682). Thus, “[t]he risk that an insurance company bears . . .for an insured who . . . act[s] in self-defense is calculable and, from a monetary standpoint, minimal” (id., quoting Cook, 210 W Va at 403, 557 SE2d at 810). Further, acts of legitimate self-defense are not illegal or wrongful, and thus coverage world not run afoul of the policy of not insuring intentional misconduct (Walukiewicz, 290 Conn at 600, 966 A2d at 682).
Of course several jurisdictions have rejected the premise that loss resulting from acts of self-defense should be covered events. Although most of the cases address the issue in the *184 context of the exclusion, some have addressed it also in the context of the term “accident.” The Washington Supreme Court has found that an act of self-defense does not negate the deliberate nature of the act, and that an accident is never present when a deliberate act is performed unless some additional, unexpected, independent and unforeseen happening occurs which brings about the injury. Thus, without such an additional unexpected occurrence beyond the act of self-defense, it can not be considered an accident (Grange Ins. Co. v Brosseau, 113 Wash 2d 91, 95-96, 776 P2d 123, 125-126 [1989]). The California Supreme Court has also addressed the issue of accident in the context of self-defense, in holding that provocation is not relevant in determining if an accident occurred. Rather, one must look to the actions of the insured (Delgado, 47 Cal 4th at 315, 211 P3d at 1091).
The bulk of the reported case law opposing coverage for injury due to self-defense relate to the exclusion for loss expected or intended by the insured. Almost universally, these cases hold that self-defense is merely a motivation for the intentional actions of the insured, and does nothing to change the character of the intentional actions (State Farm & Cas. Co. v Marshall, 554 So 2d 504, 505 [Fla 1989]; Home Ins. Co. v Neilsen, 165 Ind App 445, 451, 332 NE2d 240, 244 [1975]; AMCO Ins. Co. v Estate of Wehde, 715 NW2d 768 [Iowa Ct App 2006]; Royal Ins. Co. v Pinette, 756 A2d 520, 524 [Me 2000]; Erie Ins. Group v Bruckner, 127 NC App 405, 408, 489 SE2d 901, 904 [1997]; Cooperative Fire Ins. Assn. of Vt. v Bizon, 166 Vt 326, 335, 693 A2d 722, 728 [1997]). Further, it has been noted by the Washington Supreme Court that the coverage for intentional acts characterized as self-preservation rather than harm of another does not comport with the plain language of the policy (Brosseau, 113 Wash 2d at 99, 776 P2d at 127). To hold otherwise would effectively rewrite the policy agreed to by the parties (id.; Neilsen, 165 Ind App at 452, 332 NE2d at 244; Marshall, 554 So 2d at 506). Further, as noted by the Michigan Supreme Court, the plain language of the exclusion does not use the words “wrongful” or “unjustified.” “Rather, the plain language of the policy exclusion indicates that it only distinguishes injuries that are either ‘intended or expected’ from those that are purely accidental, meaning unintended or unexpected” (Auto Owners Ins. Co. v Harrington, 455 Mich 377, 385, 565 NW2d 839, 842 [1997]).
After reviewing the relevant policies and precedents, this court as an apparent matter of first impression agrees with the *185 case law cited above which found that injuries from intentional acts of self-defense are properly excluded from coverage under the intentional acts exclusion. The court concurs that self-defense is merely a motivation or justification for conduct that would otherwise be intentional and unlawful. It is clear, even under the law of this state, that self-defense does not negate intentionality. When properly raised in a criminal case, the “defense does not operate to excuse a criminal act, nor does it negate a particular element of a crime. Rather, by recognizing the use of force to be privileged under certain circumstances, it renders such conduct entirely lawful” (McManus, 67 NY2d at 546). In the civil context, it is an affirmative defense which if established renders the alleged tortfeasor not liable (PJI 3:3). Simply put, an act of self-defense is still an intentional act resulting in harm. While there may not be civil or criminal liability, the question of policy coverage remains unaffected. To hold otherwise would essentially rewrite an otherwise unambiguous contract for the parties, a construction which courts should avoid. This finding is further buttressed by the fact that the policy in the case at bar at one time had a self-defense exception to the exclusion, but the exception was later deleted, and was not in effect during the policy period. The apparent change in the policy language supports the view that the parties to this contract had agreed that actions of self-defense would be excluded.
Thus, the court holds that loss occasioned by acts of self-defense is excluded under the terms of the exclusion in the policy.
Further, the acts committed by the plaintiff in this case militate against a finding that he did not intend to injure Sciortino. It is undisputed that just prior to any confrontation with Sciortino, the plaintiff took a bat from his garage and put it in his vehicle, and as Sciortino approached plaintiff’s vehicle, the plaintiff exited it and went to the back to retrieve the bat, and then met Sciortino on the passenger side of the vehicle. During the altercation, plaintiff swung the bat at Sciortino, and that he hit him twice in the head area. Further, plaintiff admitted that hitting someone in the head with a bat could cause injury and death.
Plaintiff also indicated at his deposition that he just swung the bat and that he did not intend to swing and hit him in the head, and he also indicated that when he was swinging the bat, it was not his intention to cause harm and that he swung *186 to get Sciortino away from him. Yet the court finds this testimony to be a completely self-serving, last ditch effort to preserve the possibility of insurance coverage. The plaintiff made no mention during his criminal trial testimony that he did not intend to hit Sciortino in the head, nor that he was simply trying to get him away. Further, the plaintiff undeniably struck him twice in the head. Under these circumstances, his claims of lack of intent are unsupported, conclusory, and not credible as a matter of law (see Smith v New York Cent. Mut. Fire Ins. Co., 13 AD3d 686, 688 [3d Dept 2004]). Further, the plaintiff has never denied an intent to strike Sciortino’s body with the bat. He merely denied an intent to hit him in the head or to harm.
In the court’s view, the harm to Sciortino was inherent in the nature of the acts committed, and the harm flowed directly and immediately from the plaintiff’s intentional conduct. Therefore the resulting injuries were intentional (Smith, 13 AD3d at 688; see Peters, 306 AD2d at 818).
With respect to the plaintiff’s claims that his conduct amounted to negligence, the law is clear that there is no cause of action in New York for a negligent assault (Salimbene, 217 AD2d at 994). Even if the court were convinced that the plaintiff swung the bat twice to get Sciortino away from him, it is clear that such an “act was done with the intention of inflicting an offensive bodily contact upon [Sciortino] or putting him in apprehension of such contact and thus, an assault was committed regardless of whether there was actual intent to inflict injury” (id., quoting Trott v Merit Dept. Store, 106 AD2d 158, 160 [1st Dept 1985]). “New York has adopted the prevailing modern view that, once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently” (id., quoting Mazzaferro v Albany Motel Enters., 127 AD2d 374, 376 [3d Dept 1987]). Even if the theory was that the plaintiff used more force than was reasonably necessary to defend himself, the resulting legal liability would be for assault and battery, and not negligence (Figueroa v Kirmayer, 32 AD2d 923, 924 [2d Dept 1969]). The allegations in the underlying complaint, and the trial and deposition testimony of the plaintiff demonstrate that the injuries occurred as a result of an assault, and not negligence.
Therefore, the defendant’s motion for summary judgment is granted, and the cross motion by the plaintiff for summary judgment is denied.
*187 Now, therefore, in accordance with the above decision, it is hereby ordered, adjudged, and decreed that the defendant’s motion for summary judgment is hereby granted, and the complaint is dismissed; and it is further ordered, adjudged, and decreed that the plaintiff’s cross motion for summary judgment is denied.

 It should be noted that this principle from the Jafari case from California, relied upon by Walukiewicz on this point was subsequently rejected by the California Supreme Court in Delgado v Interinsurance Exch. of the Auto. Club of Southern Cal. (47 Cal 4th 302, 315, 211 P3d 1083, 1091 [2009]). However, there is no indication that Connecticut has changed its adoption of this additional view of the term accident.