Fayngersh v Kingstone Ins. Co. (2025 NY Slip Op 51871(U))

[*1]

Fayngersh v Kingstone Ins. Co.

2025 NY Slip Op 51871(U)

Decided on November 25, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 25, 2025
Supreme Court, Kings County

Miron Fayngersh, RAISA FAYNGERSH and 
 NEW POINT ESTATE FAMILY PARTNERSHIP, Plaintiffs,

against
Kingstone Insurance Company, Defendant.

Index No. 526857/2023

Anthony M. Bramante, Brooklyn, for plaintiffs.
Manning & Kass, Ellrod, Ramirez, Trester LLP, New York City (Jamie N. Burke & Preston Scherr of counsel), for defendant.

Aaron D. Maslow, J.

The following numbered papers were used on this motion: NYSCEF Document Nos. 32-80.
Upon the foregoing papers, having heard oral argument on the record, and due deliberation having been had, the within motions are determined as follows.
Introduction
In this action concerning the duty to defend an insurance policyholder, the defendant insurance company moves for summary judgment declaring that it had no duty to defend and dismissing the plaintiffs' complaint (Motion Seq. No. 2). The plaintiffs (policyholders), cross-[*2]move for summary judgment granting them a declaratory judgment on their complaint — that the defendant had a duty to defend — and dismissing the answer, affirmative defenses, and counterclaim, as well as the scheduling of a hearing on the damages (Motion Seq. No. 3).

Background
Plaintiffs in the instant action, Miron Fayngersh and Raisa Fayngersh, are members of Plaintiff New Point Estate Family Limited Partnership (all three parties herein will be referred to as "Plaintiffs"). Plaintiffs own and reside at the property located at 232 Corbin Place, Brooklyn New York 11235 ("232 Corbin Place"). Plaintiffs applied for and received an insurance policy (policy number 201224) written by Kingstone Insurance Company ("Defendant") covering the premises of 232 Corbin Place. This policy was effective from September 11, 2022 through September 11, 2023, undisputably covering the time period at issue. The policy was fully paid for by Plaintiffs.
Plaintiffs were sued in a previous and separate action ("underlying complaint") by their neighbors under Kings County Supreme Court Index No. 500217/2023. The underlying complaint alleged a private nuisance arising from Plaintiffs' refusal to remove trees situated on Plaintiffs' property and requested a declaratory judgment and injunction. The underlying complaint alleged further that as a result of this private tree nuisance, the neighbors' view of the water was blocked, and the neighbors were deprived of their right to quiet enjoyment of their property and sustained diminished property values.
Upon notice of the underlying complaint, Plaintiffs timely transmitted a copy of the lawsuit papers to Defendant, requesting defense and indemnification from damages arising from the events alleged in the underlying complaint per their insurance policy issued to them by Defendant. Defendant denied and disclaimed coverage by letter to Plaintiffs dated January 26, 2023. Within the denial of coverage letter, Defendant outlined pertinent sections of Plaintiffs' homeowner policy and included the relevant defined terms and provisions from the contract. Defendant provided the following explanation for their denial:
Under Coverage L, "Personal Liability," the Kingstone Policy provides coverage for "bodily injury" and "property damage" caused by an "occurrence," as these terms are defined by the Policy. The plaintiffs' Complaint seeks damages for "nuisance" caused by your alleged refusal to trim the trees on your property. "Property damage" is defined under the Policy as "injury to or destruction of tangible property including the loss of its use." Plaintiffs do not allege any "injury to or destruction of tangible property," and, therefore, there is no claim for "property damage." In addition, the Complaint contains causes of action for declaratory relief and injunctive relief relating to your trees. The Policy does not provide coverage for declaratory relief or injunctive relief. Moreover, none of the claims allege damages caused by an "occurrence." All the claims stem from your alleged intentional refusal to trim the trees. In view of the foregoing, there is no coverage under the Kingstone Policy for the plaintiffs' claims, and Kingstone will neither defend nor indemnify you under the Policy. (NY St Cts Elec Filing [NYSCEF] Doc No. 38 at 3.)
Following the denial by Defendant, Plaintiffs went on to defend themselves in the [*3]underlying complaint and were successful. The underlying complaint was ultimately dismissed pursuant to CPLR 3211 (a) on November 17, 2023. In rendering the decision in the underlying complaint, Justice Karen Rothenberg of Kings County Supreme determined:
"The court incorrectly determined that the plaintiffs adequately pleaded a cause of action for private nuisance based on allegations that a row of trees on defendants' property blocked plaintiffs' ocean view interfering with their right to use and enjoyment of their property. It is well settled that New York does not recognize an easement for light, air or views, except where created by express easement (see Chatsworth Realty 344 v Huson Waterfront Co. A, 209 AD2d 567 [2d Dept 2003]; see also Schaefer v Dehauski, 71 AD3d 1571 [4th Dept 2010]). Here, there is no evidence of any express agreement entitling plaintiffs to such easements (see Golub v Simon, 28 AD3d 359 [1st Dept 2006]). Furthermore, there are no allegations that the trees violated a restrictive covenant in a deed (cf. Redwood Prop. Holdings, LLC v Christopher, 211 AD3d 749 [2d Dept 2022]). As such the plaintiffs fail to adequately plead a cause of action alleging private nuisance. (NYSCEF Doc No. 53.).
The complaint in the instant action was brought by Plaintiffs against Defendant on September 15, 2023 in response to Defendant's denial of coverage. Here, Plaintiffs allege entitlement to a declaratory judgment rendering Defendant's January 26, 2023 denial invalid, as well as entitlement to legal fees in both the current action and the underlying complaint.

 Discussion
Our analysis begins by setting the framework for determining the particular issue raised: whether Defendant had a duty to defend Plaintiffs in the underlying complaint where the three causes of action raised were private nuisance, declaratory judgment, and injunctive relief. Critical to our analysis is an insurer's duty to defend as well as established principles of contract law.
Beginning first with an insurer's duty to defend, it is a long-held principle in New York that this duty is "exceedingly broad" (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 648 [1993]; see Colon v Aetna Life & Cas. Ins. Co., 6 NY2d 6, 8 [1985]). "An insurer must defend whenever the four corners of the complaint suggest—or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage" (Continental Cas. Co., 80 NY2d at 648; see Fitzpatrick v American Honda Motor Co., 78 NY2d 61, 66-67 [1991]; Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311-312 [1984]). "The duty to furnish a defense is broader than the insurer's obligation to indemnify" (id. at 310). "Though policy coverage is often denominated as liability insurance, where the insurer has made promises to defend it is clear that [the coverage] is, in fact, litigation insurance' as well" (id. [internal quotation marks omitted]).
In other words, an insurer's duty to defend is triggered when a claim is filed against an insured which alleges acts or omissions that suggest a reasonable possibility of falling within the coverage set out in the insurance policy (see American W. Home Ins. Co. v Gjonaj Realty & Mgt. Co., 192 AD3d 28, 34 [2d Dept 2020]). Therefore, "an insured need only establish that there is a potential for coverage under a policy to give rise to the insurer's duty to defend[,] and such a duty may exist even where coverage is in doubt and ultimately does not apply; indeed, [i]f, liberally construed, the claim is within the embrace of the policy, the insurer must come forward [*4]to defend its insured no matter how groundless, false or baseless the suit may be" (id. at 34 [internal quotation marks omitted]; see Automobile Ins. Co. of Hartford v Cook, 7 NY3d 131, 137 [2006], quoting Ruder & Finn v Seaboard Sur. Co., 52 NY2d 663, 670 [1981]). "[T]he Court of Appeals has held that an insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage" (American W. Home Ins. Co., 192 AD3d at 34-35, quoting Fitzpatrick, 78 NY2d at 65 [1991] [internal quotation marks omitted]). Applying these established principles, we conclude that Defendant had a duty to defend its insureds in the underlying complaint.

 Insurance Policy Includes a Duty to Defend
The relevant provisions of the policy between Plaintiffs (insureds) and Defendant (insurance company) which detail Defendant's duty to defend are as follows:
Coverage L-Personal Liability
We pay, up to our limit of liability, all sums for which any insured is legally liable because of bodily injury or property damage caused by an occurrence to which this coverage applies [emphasis added].
We will defend (with counsel of our own choice) any suit seeking damages, provided the suit resulted from bodily injury or property damage not excluded under this coverage. We may make any investigation and settle any claim or suit that we decide is appropriate. We are not obligated to provide a defense after we paid, either by judgment or settlement, an amount equal to our limit of liability. (NYSCEF Doc No. 50 at PDF 33 [emphasis added]).
Therefore, it is unambiguous that Defendant did have a duty to defend Plaintiffs should a suit seeking damages arise from bodily injury or property damage [FN1]
, which next brings us in our analysis to well-established principles of contract law through the construction of the contract. In other words, we must determine the legal effect of the contractually defined words "property damage" and "occurrence" to see if therein lies a "potential for coverage" under which an insurer's duty to defend would be triggered (American W. Home Ins. Co., 192 AD3d at 34).

 Construction of the Contract Establishes the Potential for Coverage
"An insurance policy is a written contract between an insurer and an insured and is based, in essence, on contract law" (id. at 38). "[I]nsurance policies, like all contracts, should be enforced according to their terms unless they are prohibited by public policy, statute or rule" (Liberty Mut. Ins. Co. v Aetna Cas. & Sur. Co., 168 AD2d 121, 131 [2d Dept 1991]).
Looking first to "property damage" as it is defined in the general policy provisions, the contract reads, "mean[ing] injury to or destruction of tangible property including the loss of its [*5]use" (NYSCEF Doc No. 50 at PDF 21). Defendant relies on Abruzzo DOCG Inc v Acceptance Indem. Ins. Co., 2022 WL 1024719 (Sup Ct, Kings County 2022), in which the plaintiffs' case, seeking insurance coverage from their respective insurance companies for losses sustained by the governmental COVID shut-down orders, was dismissed for failure to suffer any physical loss as required under the policies. Defendant analogizes Abruzzo to this instance because Plaintiffs' tree line did not physically touch the neighbors' property and concludes that as a result no property damage was alleged (see NYSCEF Doc No. 45 at 7). However, unlike the policy language in Abruzzo, the policy definition before us does not include language requiring "physical" injury to tangible property. Had Defendant wanted to include the language "physical" and permitted defense only for property damage resulting from such, it could have done so, but it did not (see American W. Home Ins. Co., 192 AD3d at 38).
Removing "physical" as a prerequisite for injury under "property damage," we look next to what defines "injury to . . . property" as the relevant portion of the contract definition reads (NYSCEF Doc No. 50). General Construction Law § 25-b defines "injury to property" as "an actionable event, whereby the estate of another is lessened, other than a personal injury, or the breach of a contract." In the underlying complaint, the neighbor plaintiffs alleged "diminished property value" (NYSCEF Doc No. 52). "Diminished property value" is analogous to a lessened estate and therefore the underlying complaint alleges circumstances which, if proved, would fall within the risk covered by the policy (see Sturges Mfg. Co. v Utica Mut. Ins. Co., 37 NY2d 69, 72 [1975]). As a result, if looking solely to the term "property damage" as it is defined and thereby guided by the terms of the contract itself, Defendant's broad obligation to defend would be triggered (id.).
However, another stalwart of contract construction is that a "contract will be read as a whole, and every part will be interpreted with reference to the whole" (Matter of Westmoreland Coal Co. v Entech, Inc., 100 NY2d 352, 358 [2003]). This means that a reading of a contract should not render any portion meaningless (see Beal Sav. Bank v Sommer, 8 NY3d 318, 324 [2007]). Looking to the personal liability clause as a whole, it reads "property damage caused by an occurrence" [emphasis added] (NYSCEF Doc No. 50). "Occurrence" as defined within the contract is equated to "an accident" (id.). The exact definition reads, "Occurrence means an accident, including continuous or repeated exposure to substantially similar conditions" (NYSCEF Doc No. 50 at PDF 21). While "accident" itself is not defined, the general insurance rule is that an "accident" is anything that happens or is the result of that which is unanticipated[,] and takes place without the insured's foresight or expectation or intention (see 20-129 Appleman on Insurance Law & Practice Archive § 129.2 [2011]). Judicially incapable of a clear-cut, exact definition, it is the unexpected and unforeseen nature of an "accident" from the point of view of the insured which has been emphasized by the Second Circuit Court of Appeals (id.; see Miller v Continental Ins. Co., 40 NY2d 675, 677 [1976]).
Defendants argue that Plaintiffs intentionally did not trim or cut their trees despite being asked by the neighbors to do so, which Plaintiffs' counsel conceded (see NYSCEF Doc No. 79 at 8). Therefore, Defendant concludes that the tree growth is logical and not of an "unexpected" or "unforeseen" nature from the point of view of Plaintiffs, the insureds (NYSCEF Doc No. 45 at 5-6). Defendant, based on this, argues that Plaintiffs' intentional acts do not qualify as an "accident" or "occurrence" (id.). However, the New York State Court of Appeals has previously deemed an "accident," as it pertains to insurance coverage, as one having stemmed from an intentional act which unintentionally or unexpectedly resulted in the incident (see Seaboard Sur. [*6]Co., 64 NY2d at 310; Miller, 40 NY2d 675). Additionally, policies of insurance are to be liberally construed in favor of the insured, as they are written by the insurer (see id. at 679). Adhering to precedent, we too adopt the sentiment of the Court of Appeals' definition of "accident" as it relates to Plaintiffs' intentional act of not cutting the trees, which unintentionally or unexpectedly resulted in the underlying complaint, and liberally construe the policy in favor of Plaintiff.[FN2]
Thus, Plaintiff has met their burden of establishing that there was a "potential for coverage [emphasis added] under [the] policy" as it concerns "property damage caused by an occurrence" (American W. Home Ins. Co., 192 AD3d at 34). This ultimately gave rise to the duty to defend (id.).

 Good Faith & Fair Dealing Governs the Duty to Defend
"When an insurer seeks to disclaim coverage on the further basis of an exclusion, as it does here, the insurer will be required to provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation" (Automobile Ins. Co. of Hartford v Cook, 7 NY3d 131, 137 [2006] [internal quotation marks omitted]). Here, Defendant has failed to successfully demonstrate that the allegations are solely and entirely within the policy exclusions and, similarly, to substantiate that the allegations are subject to no other interpretation aside from its own. An insurer's duty to defend remains "even though facts outside the four corners of [the] pleading indicate that the claim involved may be meritless or not covered" (id. at 137 [internal quotation marks omitted]). The present case is a premier example of the litigation insurance implicated under the "exceedingly broad" duty to defend, irrespective of the fact that an insurer may not, and here is not, required to indemnify the insured once the litigation has run its course (id.). In essence, as absolute as the foundation of good faith and fair dealing is to a contract, so too is the robust shield against the financial burdens of litigation to an insurer's unequivocable duty to defend its insureds.

 Attorneys' Fees
Inasmuch as Defendant opposed Plaintiffs' legal efforts to compel Defendant to provide a defense to the underlying complaint, including through the interposition of its counterclaim, not only are Plaintiffs entitled to be recompensed for the attorneys' fees incurred in defending the underlying action, but they are entitled to their attorneys' fees in the instant one (see U.S. Underwriters Ins. Co. v City Club Hotel, LLC, 3 NY3d 592 [2004]; Barkan v New York Schools Ins. Reciprocal, 65 AD3d 1061, 1065 [2d Dept 2009]).

Conclusion
Accordingly, it is hereby ORDERED as follows:
(1) Defendant's motion for summary judgment declaring that it had no duty to defend and to dismiss the plaintiffs' complaint (Motion Seq. No. 2) is DENIED.
(2) Plaintiffs' cross-motion for summary judgment granting them a declaratory judgment on their complaint — that the defendant had a duty to defend — and dismissing the answer, affirmative defenses, and counterclaim, as well as for the scheduling of a hearing on the damages (Motion Seq. No. 3) is GRANTED TO THE EXTENT of (a) declaring that Defendant's declination and disclaimer of providing a defense constituted a breach of the subject insurance policy and was invalid, (b) declaring that Defendant had a duty to defend Plaintiffs against the underlying complaint, (c) declaring that Plaintiffs shall recover damages from Defendant for said breach of contract in the form of attorneys' fees, costs, disbursements, and other expenses incurred therefrom, including attorneys' fees, costs, disbursements, and other expenses incurred in the course of the within action, in an amount to be proved at trial, (d) dismissing the first, second, third, fourth, eighth, ninth, tenth, twelfth, and thirteenth affirmative defenses, and (e) dismissing Defendant's counterclaim.
(3) The parties shall engage in discovery with respect to the amount of damages incurred by Plaintiffs.
(4) A preliminary conference is scheduled in the Intake Part for December 23, 2025. Rules for the Intake Part shall be consulted.

Footnotes

Footnote 1:Since damages were sought in the underlying complaint, it is irrelevant that other relief was also sought.

Footnote 2:Additionally, the extent to which the trees would grow, or whether foliage would be so thick as to completely block the neighbors' views of the water could not be anticipated with precision; the exact consequences of an intentional act need not be absolutely predictable (see Collum v State Farm Fire and Cas. Co., 155 AD2d 581 [2d Dept 1989]).